Adam J. Levitt*
John E. Tangren*
Daniel R. Ferri*
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel.: 312-214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferri@dicellolevitt.com

Steven M. Jodlowski (Bar No. 239074)
**DICELLO LEVITT LLP**
4747 Executive Drive, Second Floor
San Diego, California 92121
Tel.: 619-923-3939
stevej@dicellolevitt.com

Robert G. Loewy
**LAW OFFICES OF ROBERT G. LOEWY, P.C**
20 Enterprise, Suite 310
Aliso Viejo, California 92656
Tel.: 949-468-7150
rloewy@rloewy.com

Eric S. Dwoskin*
**DWOSKIN WASDIN LLP**
433 Plaza Real, Suite 275
Boca Raton, Florida 33432
Tel.: 561-849-8060
edwoskin@dwowas.com

Nicholas F. Wasdin*
**DWOSKIN WASDIN LLP**
110 North Wacker Drive
Chicago, Illinois 60606
Tel.: 312-343-5361
nwasdin@dwowas.com

*(*pro hac vice* forthcoming)

*Counsel for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ERAZO, KEVIN LITAM, MAURICE SCORSOLINI, and MARCUS LEWIS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> SHIMANO NORTH AMERICA BICYCLE, INC., SHIMANO NORTH AMERICA HOLDING, INC., SPECIALIZED BICYCLE COMPONENTS, INC., and TREK BICYCLE CORPORATION, <br><br> Defendants. | Case No.: <br><br> CLASS ACTION COMPLAINT <br><br> DEMAND FOR JURY TRIAL |

Jose Erazo, Kevin Litam, Maurice Scorsolini, and Marcus Lewis (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Class Action Complaint against Defendants Shimano North America Bicycle Inc. and Shimano North America Holding Inc. (together, "Shimano"), Specialized Bicycle Components Inc. ("Specialized") and Trek Bicycle Corporation ("Trek") (together, the "Bicycle Manufacturer Defendants," and with Shimano, "Defendants"), and upon personal knowledge as to Plaintiffs' own conduct, and on information and belief as to all other matters based on an investigation by counsel, allege as follows:

## I.  NATURE OF THE ACTION

1.  People trust and rely on manufacturers of bicycles and bicycle components to make safe products that do not give rise to a clear danger of personal injury.

2.  A "crankset" is the component of the bicycle that the chain and pedals attach to for pedaling. An example of a crankset is pictured below.



3.  The crankset is critical to the functionality of a bicycle because without it the bicycle cannot be pedaled. The crankset is also critical to the safety of the bicycle because if it breaks while the bicycle is being ridden, the operator of the bicycle can fall off the bicycle or lose control and crash – concerns which are particularly

applicable to modern "road" bicycles that are often ridden at high speed, near motor vehicles, with the operator's feet clipped into the pedals attached to the end of the crank arms.

4.      This case concerns certain "Hollowtech" 11-speed road cranksets (as defined below, the "Defective Cranksets") sold and distributed by Shimano and equipped on bicycles manufactured and sold by the Bicycle Manufacturer Defendants. "Class Bicycles" refers to all bicycles sold by the Bicycle Manufacturer Defendants that came equipped with a Defective Crankset.

5.      The Defective Cranksets share a common, uniform defect: the bonded crank parts can separate and break, posing a crash hazard to consumers. Examples of cranksets with certain bonded crank parts separated are pictured below.



6.      As a result of the common defect, instead of functioning as intended and as consumers expect, the Defective Cranksets can separate while the bicycle is in operation, causing crashes and significant personal injuries.

7.      The serious danger posed by the Defective Cranksets was not disclosed to consumers until September 21, 2023, when, after years of denials, Shimano finally acknowledged the widespread issue with the Defective Cranksets and issued a recall.

8.      Even though Shimano has finally acknowledged the widespread issue, it is working hard to limit the cost of fixing the issue at the expense of consumers. Rather than offering to issue refunds or replacements for **all** of the Defective Cranksets, Shimano has taken the unconscionable position that only "[c]onsumers whose cranksets show signs of bonding separation or delamination during [an] inspection will be provided a free replacement crankset . . . that the dealer will professionally install."

9.     This proposed remedy is a nightmare for riders and bike shops. Owners are left without usable bicycles while they get in line with hundreds of thousands of other impacted cyclists to schedule and await an inspection. When the inspection finally happens, a local bicycle mechanic is tasked with making a complex engineering judgment to determine whether the crankset shows sufficient deterioration to merit replacement. Worse, those consumers whose cranksets are judged to be insufficiently separated at present to merit an immediate replacement – *i.e.*, those consumers whose cranksets do not "show signs of bonding separation or delamination during the inspection" – are left in the frightening position of having to continue riding a dangerous bicycle, waiting on their cranksets to separate and potentially cause a crash before Shimano will give them a new one.

10.     As a result of the undisclosed "Crankset Defect," Plaintiffs and the other members of the proposed Classes (defined below) (collectively, the "Class") were harmed and suffered actual damages.

11.     The Defective Cranksets were sold at bicycle stores for between $270 and $1,500 and also as a standard component on Class Bicycles sold by the Bicycle Manufacturer Defendants for many thousands of dollars. The Crankset Defect significantly diminishes the value of the Defective Cranksets and the Class Bicycles on which they were installed.

12.     Further, Plaintiffs and the other Class members did not receive the benefit of their bargain; rather, they purchased cranksets and bicycles that are of a lesser standard, grade, and quality than represented, and they did not receive cranksets and bicycles that met ordinary and reasonable consumer expectations regarding safe and reliable operation. Purchasers of Defective Cranksets or Class Bicycles paid more than they would have had the crankset defect been disclosed. Plaintiffs and the other Class members were deprived of having a safe, defect-free crankset installed on their bicycles, and Defendants unjustly benefited from the sale of these products and from the unconscionable limitations on the recall remedy now offered.

13.     Plaintiffs and the other Class members also suffered damages in the form of out-of-pocket and loss-of-use expenses and costs, and, as a direct result of the deficient recall remedy, have out-of-pocket economic damage by virtue of their having incurred the expense of taking the time to bring their bicycle in for the mandated inspection.

## II.     JURISDICTION AND VENUE

14.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005, because: (a) there are at least 100 class members; (b) the matter in controversy exceeds $5 million, exclusive of interest and costs; and (c) at least one plaintiff is a citizen of a different state than at least one defendant.

15.     This Court has personal jurisdiction and venue over Defendant under 18 U.S.C. §1965(b) and (d).

16.     Venue is proper in this District under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims at issue occurred in this District and because Defendants are subject to the personal jurisdiction of this Court.

## III.     PARTIES

17.     Plaintiff Jose Erazo ("Erazo") is a resident of Fontana, California.

18.     Erazo purchased a new Trek Emonda SL 7 Disc 52 BK-BL equipped with a Shimano Ultegra R-8000 crankset with the production code "RD" in January 2020. Erazo's Class Bicycle and Shimano Ultegra R-8000 crankset were covered by written warranties. Erazo purchased the Class Bicycle from a Trek Bicycle Superstore in San Marcos, California. Through his exposure to Trek's and Shimano's advertisements, promotional materials, and other public statements, Erazo was aware of Trek's and Shimano's pervasive marketing messages that their bicycle products were high-quality and dependable, which was material to his decision to purchase the Class Bicycle. When Erazo acquired the Class Bicycle, he believed, based on Trek's and Shimano's

1  pervasive marketing messages, that he was purchasing a safe and dependable bicycle
2  with a safe and dependable crankset – one that is higher-quality and more reliable than
3  a crankset that is not marketed as high-quality and dependable. At no point before
4  Erazo purchased his Class Bicycle equipped with a Shimano Ultegra R-8000 crankset
5  did Trek or Shimano disclose that it was not high-quality or dependable, or that the
6  crankset on the bicycle had a defect that made it susceptible to delamination and
7  breaking. Upon information and belief, had Trek or Shimano disclosed the defect,
8  Erazo would have heard, seen, and been aware of it (and, indeed, Erazo became aware
9  of the defect shortly after Shimano, years later, disclosed it in September 2023). On or
10  around September 22, 2023, shortly after the recall, Erazo inquired with Trek whether
11  his Shimano Ultegra R-8000 crankset was eligible for replacement through the recall.
12  The Trek representative advised Erazo that his crankset did not qualify because the
13  crankset had not yet failed. Thus, Erazo is left in the unenviable position of either
14  paying out of pocket for a new crankset or continuing to ride a dangerous bicycle while
15  he waits on the crankset to break and potentially cause a crash and personal injury.
16  Erazo had no way of knowing when he purchased his Class Bicycle equipped with a
17  Shimano Ultegra R-8000 crankset that it was defective and only recently learned of the
18  presence of the defect in September 2023, shortly before commencing his lawsuit. If
19  Erazo had known about the defect, he either would have not purchased the Class
20  Bicycle equipped with a Shimano Ultegra R-8000 crankset, or would have paid less to
21  do so. Erazo would purchase Trek and Shimano bicycle products in the future if Trek's
22  and Shimano's representations about their products, including with respect to their
23  safety, quality, and durability, were accurate.

24    19.    Plaintiff Kevin Litam ("Litam") is a resident of Glendale, California.

25    20.    Litam purchased a new BMC Roadmachine SLR03 bicycle that came
26  equipped with a Shimano Ultegra FC-6800 crankset with the production code "NL."
27  Litam purchased the bicycle from Velo Pasadena Inc. in Pasadena, California for
28  approximately $2,800. Litam's Shimano Ultegra FC-6800 crankset was covered by a

1    written warranty. Because of Shimano's advertisements, promotional materials, and
2    other public statements, Litam was aware of Shimano's pervasive marketing messages
3    that its bicycle components are high-quality and dependable, which was material to his
4    decision to purchase the bicycle. Indeed, Litam specifically sought out a bicycle that
5    was equipped with the Shimano Ultegra FC-6800 crankset because of his
6    understanding that it was a high-quality and durable bicycle component.
7    When Litam acquired the bicycle, he believed, based on BMC's and Shimano's
8    pervasive marketing messages, that he was purchasing a safe, high-quality, and
9    dependable bicycle, one that is safer and more reliable than a bicycle that is not so
10   marketed. At no point before Litam purchased his bicycle did BMC or Shimano
11   disclose that it was not safe or dependable, or that it was equipped with a Defective
12   Crankset. Had Defendants disclosed the defect, Litam would have heard, seen, and
13   been aware of it (and, indeed, Litam became aware of the Shimano recall shortly after
14   Shimano finally announced it in September 2023). Litam had no way of knowing when
15   he purchased his bicycle that it contained a Defective Crankset and only recently
16   learned of the presence of the Crankset Defect in his bicycle in September 2023, shortly
17   before commencing his lawsuit. To Litam's knowledge, the Defective Crankset in his
18   bicycle has not been repaired or replaced, and is not presently eligible for replacement
19   under Shimano's limited recall. The value of Litam's bicycle has been diminished as a
20   result of the Crankset Defect. If Litam had known about the Crankset Defect, he either
21   would have not purchased the bicycle or would have paid less to do so. Litam would
22   purchase bicycle products from BMC or Shimano in the future if Defendants'
23   representations with respect to the safety, quality, and durability of those products were
24   accurate.

25        21.    Plaintiff Maurice Scorsolini is a resident of Davenport, Florida.

26        22.    Scorsolini purchased a Giant Advanced SL ("Giant") bicycle from The
27   Pro's Closet in July 2022 for approximately $3,380.00. The bicycle was equipped with
28   a Shimano Ultegra FC-6800 crankset with the production code "OC." Through his

exposure to Giant's and Shimano's advertisements, promotional materials, and other public statements, Scorsolini was aware of Giant's and Shimano's pervasive marketing messages that their bicycle products are high-quality and dependable, which was material to his decision to purchase the Class Bicycle. When Scorsolini acquired the Class Bicycle, he believed, based on Giant's and Shimano's pervasive marketing message, that he was purchasing a safe, high-quality, and dependable bicycle, one that is safer and more reliable than a bicycle that is not so marketed. At no point before Scorsolini purchased his Class Bicycle did Giant or Shimano disclose that it was not safe or dependable, or that it was equipped with a Defective Crankset. Had Defendants disclosed the defect, Scorsolini would have heard, seen, and been aware of it (and, indeed, Scorsolini became aware of the defect shortly after it was finally disclosed by Shimano in September 2023). Scorsolini had no way of knowing when he purchased his Class Bicycle that it contained a Defective Crankset and only recently learned of the presence of the Crankset Defect in his Class Bicycle in September 2023, shortly before commencing his lawsuit. To Scorsolini's knowledge, the Defective Crankset in his Class Bicycle has not been repaired or replaced, and is not presently eligible for replacement under Shimano's limited recall. The value of Plaintiff's Class Bicycle has been diminished as a result of the Crankset Defect. If Plaintiff had known about the Crankset Defect, he either would have not purchased the Class Bicycle, or would have paid less to do so. Plaintiff would purchase bicycle products from Giant or Shimano in the future if Defendants' representations with respect to the safety, quality, and durability of those products were accurate.

23.     Plaintiff Marcus Lewis ("Lewis") is a resident of Chicago, Illinois.

24.     Lewis purchased a new Specialized Tarmac Disk Comp SL6 bicycle that came equipped with a Shimano Ultegra FC-R8000 crankset with the production code "QD." Lewis purchased the Class Bicycle from Kozy Inc. in Chicago, Illinois for over $2,500. Lewis placed the Class Bicycle on layaway with Kozy Inc. in September 2019 and completed the purchase and first took possession of the Class Bicycle in March

CLASS ACTION COMPLAINT

2023. Lewis's Class Bicycle and Shimano Ultegra FC-R8000 crankset were covered by written warranties. Through his exposure to Specialized's and Shimano's advertisements, promotional materials, and other public statements, Lewis was aware of Specialized's and Shimano's pervasive marketing messages that their bicycle products were high-quality and dependable, which was material to his decision to purchase the Class Bicycle. When Lewis placed the Class Bicycle on layaway in September 2019, and when he completed the purchase and first took possession of the Class Bicycle in March 2023, he believed, based on Specialized's and Shimano's pervasive marketing messages, that he was purchasing a safe and dependable bicycle with a safe and dependable crankset – one that is higher-quality and more reliable than a crankset that is not marketed as high-quality and dependable. At no point before Lewis purchased his Class Bicycle equipped with a Shimano Ultegra R-8000 crankset did Specialized or Shimano disclose that it was not high-quality or dependable, or that the crankset on the bicycle had a defect that made it susceptible to delamination and breaking. Upon information and belief, had Specialized or Shimano disclosed the defect, Lewis would have heard, seen, and been aware of it (and, indeed, Lewis became aware of the defect shortly after Shimano disclosed it in September 2023). Since acquiring the Class Bicycle earlier this year, Lewis has not ridden it frequently, and thus the Defective Crankset is still in "like new" condition and, on information and belief, has not yet begun to "show signs of bonding separation or delamination" sufficient to warrant replacement under Shimano's limited recall. Thus, Lewis is left in the unenviable position of either paying out of pocket for a new crankset or continuing to ride a dangerous Class Bicycle while he waits on the crankset to break and potentially cause a crash and personal injury. Lewis had no way of knowing when he purchased his Class Bicycle equipped with a Shimano Ultegra R-8000 crankset that it was defective and only recently learned of the presence of the defect in September 2023, shortly before commencing his lawsuit. If Lewis had known about the defect, he either would have not purchased the Class Bicycle equipped with a Shimano Ultegra

1    R-8000 crankset, or would have paid less to do so. Lewis would purchase Specialized

2    and Shimano bicycle products in the future if Specialized's and Shimano's

3    representations about their products, including with respect to their safety, quality and

4    durability, were accurate.

5    25.    Defendant Shimano North America Bicycle Inc. is a California

6    corporation with its principal place of business in Irvine, California.

7    26.    Defendant Shimano North America Holding Inc. is a California

8    corporation with its principal place of business in Irvine, California.

9    27.    Defendant Specialized Bicycle Component Inc. is a Delaware corporation

10    with its principal place of business in Morgan Hill, California.

11    28.    Defendant Trek Bicycle Corporation is a Wisconsin corporation with its

12    principal place of business in Waterloo, Wisconsin.

13    **IV.    GENERAL FACTUAL ALLEGATIONS**

14    29.    Plaintiffs bring this action on behalf of themselves and all persons

15    similarly situated who purchased a Defective Crankset or Class Bicycle. Plaintiffs seek

16    redress individually and on behalf of those similarly situated for economic losses

17    stemming from Defendants' distribution and/or sale of the Defective Cranksets and

18    Class Bicycles, including but not limited to, diminished value. Plaintiffs, on behalf of

19    themselves and those similarly situated, seek to recover damages and statutory

20    penalties.

21    **A.    The Defective Cranksets**

22    30.    "Defective Cranksets" refers to the 11-Speed Bonded Hollowtech II Road

23    Cranksets subject to Shimano's September 21, 2023, recall, including the following

24    models: Ultegra FC-6800, Dura-Ace FC-9000, Ultegra FC-R8000, Dura-Ace FC-

25    R9100 and FC-R9100P. The recalled models were manufactured prior to July 2019 and

26    have printed 'Ultegra' or 'Dura Ace' logos on the arm. The affected models have the

27    following two-letter production code on the backside of the crank arm where the pedals

28    are attached: KF, KG, KH, KI, KJ, KK, KL, LA, LB, LC, LD, LE, LF, LG, LH, LI, LJ,

LK, LL, MA, MB, MC, MD, ME, MF, MG, MH, MI, MJ, MK, ML, NA, NB, NC, ND, NE, NF, NG, NH, NI, NJ, NK, NL, OA, OB, OC, OD, OE, OF, OG, OH, OI, OJ, OK, OL, PA, PB, PC, PD, PE, PF, PG, PH, PI, PJ, PK, PL, QA, QB, QC, QD, QE, QF, QG, QH, QI, QJ, QK, QL, RA, RB, RC, RD, RE, and RF. All Defective Cranksets suffer from the same defect, and, as a result of the defect, have an unreasonable tendency to break, separate, or delaminate during normal use, posing a crash hazard to consumers. The following image provides an example of how the Defective Cranksets can separate and break because of the defect.



31.     Approximately 680,000 Defective Cranksets were sold for between $270 and $1,500 each at bicycle stores nationwide – both as standalone components and as part of Class Bicycles sold by the Bicycle Manufacturer Defendants – from January 2012 through August 2023.

**B.     Defendants' Prior Knowledge of Crankset Failure Injuries**

32.     This is not the first time Shimano has produced and sold defective cranksets.

33.     In 1997, Shimano issued a recall for 2.5 million bicycle cranksets installed on hundreds of models of mountain bikes. The faulty cranksets were manufactured from mid-1994 to mid-1995 and were installed mainly on low- to mid-priced mountain bikes sold under a number of brands, including Trek.

34.     The recall was prompted by reports of rider injuries from broken cranksets. Shimano began receiving complaints in 1995, and, by the time of the recall in 1997, executives at Shimano's Irvine, California headquarters acknowledged receiving at least 630 reports in North America of the cranksets breaking while in use, resulting in at least 22 rider injuries ranging from cuts to fractures.

### C.     Defendants' Knowledge of the Defective Cranksets

35.     Upon information and belief, Shimano and the Bicycle Manufacturer Defendants received customer complaints regarding the Defective Cranksets breaking or separating while in use years before Shimano issued a recall, and years before the Bicycle Manufacturer Defendants stopped selling the Defective Cranksets as components on Class Bicycles.

36.     On September 1, 2016, a cyclist was riding at approximately 20 miles per hour on the "Bandy Loop" bicycling trail near Roanoke, Virginia, when, with absolutely no warning, the Shimano Ultegra 6800 11-speed crankset on the right-hand side of his bicycle snapped in two. As a result of the Defective Crankset breaking, the cyclist's foot hit the pavement, he lost control of his bicycle, and he crashed into a ditch. The cyclist reported the issue to his bicycle shop on September 2, 2016. The bicycle shop immediately contacted Shimano, and Shimano responded that it was already aware of the problem.

37.     In August 2017, a YouTube user named "Just Me" posted a video regarding a Shimano Ultegra 6800 crank failure. The video shows and describes a Defective Crankset that delaminated and snapped. The description of the video notes that "[t]he bond between the plastic part and the inner aluminum part has failed." The video description further describes that Shimano replaced Defective Crankset, which, upon information and belief, means that the cyclist reported the issue to Shimano.

38.     In November 2017, an Instagram account named "@thanksshimano" was opened and thereafter began posting images documenting problems with the Defective Cranksets. For example, an image posted on January 18, 2018 shows a failed Shimano

Ultegra FC-6800 Defective Crankset. The "@thanksshimano" Instagram account made **hundreds** of similar posts between 2018 and 2023. Upon information and belief, Shimano follows the "@thanksshimano" Instagram account and reviews its contents.

39.     On the morning of January 15, 2020, a cyclist was riding his bicycle in the rain on his commute to work when, just as he came out of a corner and stood up on his pedals, his Shimano Ultegra 6800 Defective Crankset failed spectacularly. The incident was subsequently researched by a bicycle journalist working for www.bikeradar.com. The journalist raised the incident with Shimano, and asked if Shimano was aware of a pattern of failures with its Hollowtech cranksets. The journalist reported that Shimano denied that the cranksets were defective and stated that the reported incident "'was an anomaly'" and further that Shimano "'work[s] hard to make sure our products meet our exacting quality standards before they leave our factories.'"

40.     On October 17, 2021, a rider posted on the blog www.road.cc describing an incident in which the Defective Crankset on his bicycle split in two and caused him to crash. On November 16, 2021, www.road.cc further reported on the issue in an article titled "Shimano denies design problem with Hollowtech cranks despite reports of cracked arms," with a sub-headline reading "Shimano says that there isn't a design problem with its Hollowtech cranks despite reports of a pattern of failures." The report states that "[w]e brought the reported failures of cranks to the company's attention and in a nutshell, Shimano says there is no design problem." The report quotes Shimano as stating, among other things, that "'[c]rank failures do occur, even though our cranks do not have any design problems . . . We would like to be able to give further details, but we cannot at this point . . . .'" Shimano's response further confirmed that Shimano was conducting an internal investigation into the Defective Cranksets.

41.     On February 3, 2022, Hambini Performance Engineering published an engineering analysis of a Defective Crankset failure. The report states that: "Shimano have had some issues with their high end cranksets in recent times. It seems as though the Ultegra and Dura Ace cranksets are the primary units affected. There have been

many reports of the cranksets fracturing in half." The report contains an engineering analysis of one crankset failure, concluding that:

> The ultimate mode of failure is a break in the joint between the two halves of the crankset . . . . In the case of this failed example, there is clear evidence of galvanic corrosion and almost all units have failed as a result of some form of corrosion.
>
> *        *        *
>
> It is highly unlikely that a crank of this design in the field has no onset of corrosion. It would need to be operated in a completely arid environment devoid of any potential electrolyte.

The report further notes that "Shimano have largely tried to deflect the situation and at least publicly deny there is a problem."

42.    On April 5, 2022, Outside magazine published an article titled "What's going on with Shimano's road cranks?" The article states that:

> You may have caught wind of some reliability issues concerning previous-generation, high-end Shimano road cranks, specifically Dura-Ace 9000 and R9100, and Ultegra R8000 and 6800. Basically, some of them are coming apart. Shimano won't officially comment on the issue (perhaps due to legal constraints – and believe me, we've asked) . . . .

The article further states that "third-party analyses have suggested a common symptom for many of these failures: corrosion. . . . That corrosion can then compromise the bond integrity, which can then potentially lead to complete structural failure under load."

43.    Although Shimano previously described Defective Crankset failure as "an anomaly," and repeatedly assured consumers that the Defective Cranksets were safe and not defective, Shimano has now admitted – in the September 21, 2023 recall – that it is in fact on notice of "4,519 incidents of cranksets separating," several of which caused significant personal injuries, including "bone fractures, joint displacement and lacerations."

**D.    Defendants' Representations Regarding the Defective Cranksets**

44.    Shimano regularly touted the strength and reliability of the Defective Cranksets in its marketing materials.

45.    With respect to its overall bicycle engineering and manufacturing capabilities, Shimano told consumers that "we realize innovative new products excelling both in high precision and in durability by the metal-processing technologies we have developed for many years."

46.    Shimano's website describes the entire Hollowtech II series, which includes all of the Defective Cranksets, as "simply the most optimized crankset design on the market," with "the best balance of stiffness, strength, weight and rotating performance," and "high-precision sealing in the bearing area to increase durability maintaining the excellent rotating performance for long periods."

47.    Beginning at least as early as 2012, Shimano representatives told bicycle media outlets that the Defective Cranksets offer "the best choice in terms of performance, strength and longevity."

48.    Shimano told consumers that the Defective Cranksets sold under the Dura-Ace brand delivered "the finest mechanical performance," that the Hollowtech II construction "put[] strength just where it's needed" and delivered "a truly dominating performance," and that "[w]hen you ride DURA-ACE, you're riding to win."

49.    Shimano told consumers that the Defective Cranksets sold under the Ultegra brand were "pro-proven," with "state of the art technology" that provided "the best balance of stiffness, strength, weight, and rotating performance."

50.    None of these representations made by Shimano was accurate. The Defective Cranksets were not "durable," "strong," or "the best choice in terms of performance, strength and longevity." They did not provide "excellent rotating performance for long periods," "put strength just where it's needed," or appropriately balance strength with other performance objectives. Shimano omitted, and did not disclose, the safety defect pervading the Defective Cranksets until September 21, 2023.

51.    Specialized regularly touted the quality and reliability of its Class Bicycles. Specialized boldly and broadly proclaimed to consumers that its Class Bicycles were "perfect," "simply the best," and included "every possible advantage"

for cyclists to "deliver you the perfect ride." The following is one example of Specialized's pervasive marketing of its bicycles as flawless and high-quality:

**Bikes**

Perfection. It's hard to define, yet easy to recognize. We specialize in the science of perfection, however, and every road bike we make embodies it. No matter your motivation or discipline, you'll benefit from our attention to detail and innovative spirit. So whether you're getting dirty on cyclocross bikes, leaving it all on the road, or testing your limits in a triathlon, you can rest assured that the bike underneath you is simply the best.

52.     Specialized further advertised that its road bicycles (including its Class Bicycles) "set the standard by which all others are measured," "perform flawlessly for every rider," and have "no weaknesses." As one example of Specialized's pervasive marketing regarding the quality of its Class Bicycles, Specialized claimed that, with respect to its Tarmac SL6 Class Bicycle, it "scrutinized every single aspect . . . to ensure you're getting the perfect ride," and further that it came with high-quality "no fuss" components – which included Shimano Ultegra Defective Cranksets – that kept "weight low and durability high." With respect to Specialized's higher-end Class Bicycles that included the Shimano Dura-Ace Defective Cranksets, Specialized told customers that their "perfect" bicycles deserved "the utmost in dressings," which is why Specialized "outfitted it with components that share an equally impressive history, like Shimano Dura-Ace 9000 . . . that [is] primed to make mincemeat out of the world's toughest climbs and descents."

53.     None of these representations made by Specialized was accurate. Far from being "perfect," having "no weaknesses," and allowing riders to "rest assured that the bike underneath [them] is simply the best," Specialized Class Bicycles came equipped with Defective Cranksets that can separate and fail without warning and cause a crash and significant personal injury. Specialized omitted, and did not disclose, that its Class Bicycles in fact were equipped with defective cranksets.

54.     Trek regularly touted the quality of its Class Bicycles. Trek holds itself out as selling "[t]he world's best bikes and cycling gear," and, with respect to its "performance road bikes" (which includes the Class Bicycles), Trek promised consumers that its bikes would "deliver the ultimate performance." Trek tells

consumers that each of its bicycles comes with "a carefully selected combination of parts," including "the crank," and that Shimano in particular "makes incredible components for our bikes which have their own benefits to better suit how you like to ride." Trek Class Bicycles equipped with Defective Cranksets were marketed as containing "high-end" Shimano cranksets. Trek so integrated Shimano's branding and components into its own branding and marketing that Trek painted Shimano's logo on certain high-end Trek Class Bicycles alongside the Trek logo:



55.    None of these representations made by Trek was accurate. Trek Class Bicycles are not "the world's best bikes and cycling gear" and do not come with "incredible" and "high-end" Shimano cranksets that "better suit how [cyclists] like to ride." Rather, the Trek Class Bicycles were equipped with Defective Cranksets made by Shimano that can unexpectedly separate and fail, causing crashes and significant personal injury. Trek omitted, and did not disclose, that its Class Bicycles in fact were equipped with defective cranksets.

**E.    The Inadequate Recall**

56.    On September 21, 2023, Shimano finally issued a recall on the Defective Cranksets.

57.     According to Shimano's recall, the Defective Cranksets "can separate and break, posing a crash hazard to consumers," and "[c]onsumers should immediately stop using the cranksets manufactured before July 1, 2019, and contact an authorized Shimano dealer to schedule a free crankset inspection."

58.     There are a number of problems and shortcomings with Shimano's proposed recall remedy.

a) First, hundreds of thousands of consumers are now left without a bicycle while they navigate the process of attempting to schedule a time-consuming inspection with a finite number of local bicycle mechanics alongside hundreds of thousands of other impacted cyclists. This process will inevitably cause consumers to be without their bicycles for extended periods of time while they await the initial inspection.

b) Second, Shimano touts the Defective Cranksets as sophisticated pieces of performance engineering, but, to save money during the recall, is deferring to local bike shops to make an important engineering determination – whether any particular Defective Crankset shows "signs of bonding separation or delamination" – that is critical to rider safety. Many local bicycle mechanics are not engineers and should not be put in the position of making complicated engineering judgments related to a critical safety issue (and incurring the potential legal liability in the event a replacement is denied and the Defective Crankset later breaks and causes an injury). Making matters worse, on information and belief, the bicycle mechanics are being asked to make this engineering judgment based solely on a visual inspection, without the benefit of stress testing.

c) Third, and most importantly, rather than offering to repair or replace (or refund) each of the approximately 680,000 Defective Cranksets subject to the U.S. recall, Shimano's proposed recall remedy states that only

CLASS ACTION COMPLAINT

"[c]onsumers whose cranksets show signs of bonding separation or delamination during the inspection will be provided a free replacement crankset . . . that the dealer will professionally install." In other words, *Shimano is not offering any remedy for Defective Cranksets that have not yet begun to fail*, and consumers who own a Defective Crankset that has not already begun to fail are left in the frightening position of having to ride a dangerous bicycle for months or years, waiting on their cranksets to separate and potentially cause a crash before Shimano will give them a new one.

d) Fourth, if consumers have already discarded their Defective Cranksets or attempted to fix it themselves, they are, upon information and belief, ineligible to participate in the recall.

e) Fifth, those consumers eligible to receive a replacement are not made whole as part of the recall. Rather than providing customers a non-defective component of equivalent specification and value, Shimano is replacing the 11-speed Defective Cranksets with 12-speed cranksets. These 12-speed cranksets may not properly integrate with the balance of the components on any particular bicycle – for example, the replacement 12-speed cranksets are geared to better interact with the gear ratios of a 12-speed cassette, which most or all consumers replacing an 11-speed Defective Crankset will not have equipped on their bike. And even putting compatibility with other components aside, the replacement 12-speeed crankset may not be the desired or optimum performance choice for any particular owner of a Defective Crankset, all of whom had previously selected and purchased an 11-speed crankset as their optimum choice.

59.    Shimano made the decision to unreasonably limit the proposed recall remedy for profit reasons. Each of the approximately 680,000 Defective Cranksets sold

for between $270 and $1,500. Doing the right thing and replacing **all** of the Defective Cranksets would, on information and belief, cost Shimano hundreds of millions of dollars. By instead issuing a narrow recall with a plainly inadequate remedy – shop inspection followed by only replacing the subset of Defective Cranksets that have already begun to fail – Shimano will save significant money at the expense of rider safety.

60.    Upon information and belief, Shimano does not have a sufficient quantity of non-defective cranksets to replace all of the Defective Cranksets.

61.    Neither Specialized nor Trek have issued a recall on the Class Bicycles.

62.    Plaintiffs' counsel, on behalf of Plaintiffs, served Defendants with notice of their violations of applicable consumer-protection and warranty laws related to the Defective Cranksets and demanded that Defendants correct or agree to correct the actions described therein.

**F.    Economic Injury to the Classes from the Diminished Value of the Defective Cranksets and Class Bicycles**

63.    The Defective Cranksets and Class Bicycles were worth less than the prices the Class members paid for them. When assessing the value of a crankset or bicycle and whether to purchase it, neither the market nor any reasonable consumer would ignore the material danger involving bonded crank parts that separate and break, posing a crash hazard to consumers. Consequently, Plaintiffs paid more for their Defective Cranksets and Class Bicycles than they otherwise would have because of the Crankset Defect, or they purchased Defective Cranksets and/or Class Bicycles that they otherwise would not have purchased.

64.    By concealing the Crankset Defect, Defendants distorted and misrepresented the true value of every Defective Crankset and Class Bicycle. Every Plaintiff and Class member received a Defective Crankset and/or Class Bicycle with different characteristics and of different and substantially lesser value than they reasonably believed they were receiving. Accordingly, Plaintiffs and the other Class

1    members did not realize the benefit of their bargain in purchasing the Defective
2    Cranksets and Class Bicycles, and their expectations as ordinary reasonable consumers
3    were not met.

4        65.    The Defective Cranksets are but one of the broader sets of "drivetrain" or
5    "groupset" bicycle components, which include not only the crankset but also, among
6    other things, the brake levers/shift levers, rear derailleur, front derailleur, and cassette
7    (the gear sprockets at the rear of the bike). Consumers often purchase these components
8    as part of a single complete set, *i.e.*, many consumers who purchased a Dura-Ace 9100
9    Defective Crankset also purchased matching Dura-Ace groupset components, all of
10    which were designed and styled to go together on the bicycle. Because of the Defective
11    Cranksets, many consumers will now be forced to either (a) purchase a non-matching
12    crankset to replace the Defective Crankset, and incur the related performance and
13    aesthetic cost, or (b) replace the entire groupset, and incur significant additional out-
14    of-pocket expenses.

15        66.    Shimano's September 21, 2023, recall of the Defective Cranksets was
16    widely publicized in the cycling community, and Shimano's inadequate recall remedy
17    (*i.e.*, only replacing those Defective Cranksets that have already begun to delaminate
18    or crack) sparked consternation among cyclists. Shimano's limited recall has thus
19    tainted the resale market for Defective Cranksets and Class Bicycles because, upon
20    information and belief, subsequent purchasers will be less likely to shop for and
21    purchase Class Bicycles out of concern that many will not qualify for replacement of
22    the Defective Crankset under Shimano's recall.

23        67.    For these reasons, every Defective Crankset and Class Bicycle was worth
24    less than what Plaintiffs and the other Class members paid for them.

25    **V.    TOLLING ALLEGATIONS**

26        68.    Plaintiffs and the other Class members had no knowledge of the
27    misconduct and concealment alleged herein, or of facts sufficient to place them on

28

CLASS ACTION COMPLAINT

1  inquiry notice of the claims set forth herein, until September 2023 when Shimano
2  recalled the Defective Crankset.

3          69.     Plaintiffs and the other Class members are consumers who purchased
4  Defective Cranksets and Class Bicycles. No information in the public domain was
5  available to the Plaintiffs and the other Class members prior to August 2023 that
6  revealed sufficient information to suggest that Defendants were involved in the
7  misconduct or concealment alleged herein. Therefore, the statute of limitations did not
8  begin to run because Plaintiffs and the other Class members did not and could not
9  discover their claims.

10         70.     In the alternative, the statute of limitations did not begin to run because
11 the Defendants fraudulently concealed the Defective Cranksets until, at the earliest,
12 September 2023. On information and belief, Defendant Shimano and the Bicycle
13 Manufacturer Defendants have known of the defects in the cranksets for years, through,
14 among other sources, customer complaints, warranty repairs, internal investigations,
15 and/or public reporting. Defendants knew of the defects well before the Plaintiffs and
16 many of the other Class members purchased the Defective Cranksets and/or Class
17 Bicycles, and have concealed from or failed to notify Plaintiffs, the other Class
18 members, and the public of the full and complete nature of the Crankset Defect.

19         71.     Plaintiffs and the other Class members had no means of obtaining any
20 facts or information concerning any aspect of Shimano's investigation into the
21 Defective Cranksets (which Shimano refused to disclose publicly) or Shimano's
22 dealings with the Bicycle Manufacturer Defendants, much less the fact that they had
23 engaged in the misconduct and concealment alleged herein. For these reasons, the
24 statute of limitations as to Plaintiffs' and the other Class members' claims did not begin
25 to run and has been tolled with respect to the claims that Plaintiffs and the other Class
26 members have alleged in this Complaint.

27

28

CLASS ACTION COMPLAINT

1    **VI.    CLASS ALLEGATIONS**

2    72.    The Classes' claims all derive directly from the same Defective Cranksets.

3    This case is about the responsibility of Shimano and the Bicycle Manufacturer

4    Defendants for their products and the affirmative statements and omissions they made

5    with respect to their products. Shimano and the Bicycle Manufacturer Defendants have

6    engaged in uniform and standardized conduct toward the Classes – they did not

7    differentiate, in degree of care or candor, in their actions or inactions, or in the content

8    of their statements or omissions, among individual Class members. The objective facts

9    on these subjects are the same for all Class members. Within each claim for relief

10    asserted by the respective Classes, the same legal standards govern. Additionally, many

11    states, and for some claims all states, share the same legal standards and elements of

12    proof, facilitating the certification of multistate or nationwide classes for some or all

13    claims. Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf

14    and on behalf of all other persons similarly situated as members of the proposes Classes

15    pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or

16    (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy,

17    predominance, and superiority requirements of those provisions.

18    73.    **The Nationwide Consumer Class**: Plaintiffs bring this action and seek

19    to certify and maintain it as a class action under Rules 23(a) and/or (b)(3) and/or (b)(2)

20    and/or (c)(4) of the Federal Rules of Civil Procedure on behalf of themselves and a

21    Nationwide Consumer Class defined as follows:

22

23    All persons in the United States who, prior to the date on which the
    Defective Cranksets were recalled, purchased a Defective Crankset or

24    a bicycle containing a Defective Crankset, and who: (i) still own the
    Defective Crankset, (ii) sold the Defective Crankset after the date on

25    which the Defective Cranksets were recalled, or (iii) discarded the
    Defective Crankset after it failed or was recalled.

26

27

28

74.   **The State Consumer Classes**: Plaintiffs allege statewide class action claims on behalf of classes in the following states: California, Florida, and Illinois. Each of these State Consumer Classes is initially defined as follows:

> All persons who, prior to the date on which the Defective Cranksets were recalled, purchased a Defective Crankset or a bicycle containing a Defective Crankset in the state of _____ (*e.g.*, California), and who (i) still own the Defective Crankset, (ii) sold the Defective Crankset after the date on which the Defective Cranksets were recalled, or (iii) discarded the Defective Crankset after it failed or was recalled.[1]

75.   The Nationwide and State Consumer Classes and their members are referred to herein as the "Class" or "Classes."

76.   Excluded from each Class are Shimano and the Bicycle Manufacturer Defendants, their employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Shimano and the Bicycle Manufacturer Defendants; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

77.   This action satisfies the requirements of Federal Rule of Civil Procedure 23(a)(1). Hundreds of thousands of Defective Cranksets were sold nationwide, individually, and as part of Class Bicycles. Individual joinder of all Class members is impracticable.

78.   Each of the Classes is ascertainable because its members can be readily identified using sales records, production records, and other information kept by Shimano and the Bicycle Manufacturer Defendants or third parties in the usual course of business and within their control. Plaintiffs anticipate providing appropriate notice to each certified Class, in compliance with Federal Rule of Civil Procedure

---

[1]   Consistent with Federal Rule of Civil Procedure 23(c)(5) which authorizes the creation of Classes "[w]hen appropriate," Plaintiffs reserve their right to modify the Class and the State Classes as discovery progresses and at the class certification stage. Fed. R. Civ. P. 23(c)(5).

1   23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or
2   pursuant to court order under Federal Rule of Civil Procedure 23(d).

3       79.    This action satisfies the requirements of Federal Rule of Civil Procedure
4   23(a)(2) and 23(b)(3) because questions of law and fact that have common answers that
5   are the same for each of the respective Classes predominate over questions affecting
6   only individual Class members. These include, without limitation, the following:

7           a)  whether the Defective Cranksets are defective;
8           b)  whether the Class Bicycles are equipped with the Defective
9               Cranksets;
10          c)  whether the Defective Cranksets suffer from the same defect;
11          d)  whether Defendants knew or should have known about the defect,
12              and, if so, for how long;
13          e)  whether the Defective Cranksets pose an unreasonable safety risk to
14              consumers;
15          f)  whether the defective nature of the Defective Cranksets constitutes a
16              material fact reasonable consumers would have considered in
17              deciding whether to purchase a Defective Crankset or bicycle
18              containing a Defective Crankset;
19          g)  whether Defendants had a duty to disclose the defective nature of the
20              Defective Cranksets to Plaintiffs and the other Class members;
21          h)  whether Defendants omitted and failed to disclose material facts about
22              the Defective Cranksets;
23          i)  whether Defendants' concealment of the true nature of the Defective
24              Cranksets induced Plaintiffs and Class members to act to their
25              detriment by purchasing the Defective Cranksets or bicycles
26              containing the Defective Cranksets;
27
28

j)   whether Defendants conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

k)   whether Defendants mispresented that the Defective Cranksets or bicycles containing the Defective Cranksets were safe, made of high-quality materials, and reliable;

l)   whether Defendants engaged in unfair, deceptive, and unlawful acts or practices in trade or commerce by failing to disclose that the Defective Cranksets were defective;

m)   whether Defendants' conduct, as alleged herein, was likely to mislead a reasonable consumer;

n)   whether Defendants' statements, concealments, and omissions regarding the Defective Cranksets were material, in that a reasonable consumer could consider them important in purchasing, selling, maintaining, or operating the Defective Cranksets or bicycles containing the Defective Cranksets;

o)   whether Defendants violated each of the States' consumer protection statutes, and if so, what remedies are available under those statutes;

p)   whether the Defective Cranksets were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

q)   whether Plaintiffs and the other Class members are entitled to a declaratory judgment stating that the Defective Cranksets are defective and/or not merchantable;

r)   whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiffs and the other Class members;

s)   whether Defendants have been unjustly enriched by their conduct; and

CLASS ACTION COMPLAINT

t) what aggregate amounts of statutory penalties are sufficient to punish and deter Defendants and to vindicate statutory and public policy.

80. The violations of law and resulting harms alleged by the named Plaintiffs are typical of the legal violations and harms suffered by all Class members. All such claims arise out of the same wrongful course of conduct engaged in by Defendants in violation of law as described herein. Further, the damages of each member of the Classes were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

81. Plaintiffs will fairly and adequately protect the interests of the Classes. By prevailing on their own claims, Plaintiffs will establish Defendants' liability to all Class members. Plaintiffs' counsel are unaware of any conflicts of interest between the Class representatives and absent Class members with respect to the matters at issue in this litigation; the Class representatives will vigorously prosecute the suit on behalf of the Class; and the Class representatives are represented by counsel with substantial experience in complex and class action litigation, including consumer class actions. Plaintiffs' attorneys have investigated the claims in this action and have committed sufficient resources to represent the Class.

82. The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice. Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, such that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Federal Rule of Civil Procedure 23(b)(3)(A). Moreover, the prosecution of separate actions by individual members of the Class could result in

CLASS ACTION COMPLAINT

inconsistent or varying adjudications with respect to individual members of the Class and/or Defendants.

83.    The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Federal Rule of Civil Procedure 23(b)(3)(D).

84.    Plaintiffs reserve the right to seek certification of Rule 23(c)(4) of common questions related to Defendants' knowledge, conduct, and duties.

85.    The Classes expressly disclaim any recovery in this action for physical injury resulting from the Defective Cranksets without waiving or dismissing such claims. Injuries suffered in bicycle crashes as a result of Defective Cranksets constitute evidence supporting various claims, including diminution of value, and are continuing to occur because of Shimano's delays and inaction regarding the commencement and completion of a meaningful recall. The increased risk of injury from the Defective Cranksets serves as an independent justification for the relief sought by Plaintiffs and the other Class members.

## VII.    CAUSES OF ACTION

### CLAIMS ASSERTED ON BEHALF OF THE NATIONWIDE CLASS

### <u>Nationwide Count 1: Unjust Enrichment Against Shimano and the Bicycle Manufacturer Defendants</u>

86.    Plaintiffs reallege and incorporate by reference Paragraphs 1-85 as though fully set forth herein.

87.     Plaintiffs bring this count under California law, individually and on behalf of the other members of the Nationwide Class against Shimano and the Bicycle Manufacturer Defendants.

88.     When they purchased cranksets or the Class Bicycles, Plaintiffs and the other Class members conferred tangible and material economic benefits upon Shimano and/or the Bicycle Manufacturer Defendants, who readily accepted and retained these benefits.

89.     Plaintiffs and the other Class members would not have purchased their cranksets and/or Class Bicycles, or would have paid less for them, had they known of the Crankset Defect at the time of purchase. Therefore, Shimano and the Bicycle Manufacturer Defendants profited from the sale of the cranksets and Class Bicycles to the detriment and expense of Plaintiffs and the other Class members.

90.     Shimano and the Bicycle Manufacturer Defendants appreciated these economic benefits. These benefits were the expected result of Shimano and the Bicycle Manufacturer Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Crankset Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and the other Class members regarding the nature and quality of the cranksets and/or Class Bicycles while profiting from this deception.

91.     It would be unjust, inequitable, and unconscionable for Shimano and the Bicycle Manufacturer Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

92.     Plaintiffs and the other Class members are entitled to restitution of the benefits Shimano and the Bicycle Manufacturer Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and the other Class members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

CLASS ACTION COMPLAINT

93.    Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Federal Rule of Civil Procedure 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages and enters judgment on them in favor of Shimano and the Bicycle Manufacturer Defendants, Plaintiffs will have no adequate legal remedy.

**CLAIMS ASSERTED ON BEHALF OF STATE CONSUMER CLASSES**

**<u>California Count 1: Breach of Express Warranty (Cal. Com. Code §2313)</u>**

**<u>Against Shimano</u>**

94.    Plaintiffs reallege and incorporate by reference Paragraphs 1-85 as though fully set forth herein.

95.    Erazo and Litam (the "California Plaintiffs") bring this count under California law, individually and on behalf of the other members of the California Class against Shimano and the Bicycle Manufacturer Defendants for their respective Class Bicycles.

96.    The cranksets and the Class Bicycles are "goods" under Cal. Com. Code §2105(1).

97.    Shimano is a "merchant" and "seller" of the cranksets under Cal. Com. Code §§2104(1) and 2103(1)(d), respectively.

98.    Plaintiffs and the other Class members who purchased the cranksets and Class Bicycles in California are "buyers" under Cal. Com. Code §2103(1)(a).

99.    Shimano issued an express written warranty for each defective crankset they sold, including that:

  a) The cranksets would be free of defects in materials and workmanship at the time of sale; and

  b) The cranksets were safe and reliable, and their cranksets would function properly during the operation of the bicycles.

100.    The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and the other Class members' purchase of the cranksets and Class Bicycles.

101.  Shimano knowingly breached its warranty for the cranksets because:

a)    The cranksets have latent defects which have a dangerous propensity to cause the bonded crank parts to separate and break, subjecting Plaintiffs and the other Class members to the risk of loss and injury; and

b)    Shimano denied, concealed, and misrepresented the Crankset Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and the other Class members.

102.  Shimano knew or should have known that the warranties were false and/or misleading. Specifically, Shimano was aware of the Crankset Defect, which made the cranksets and Class Bicycles inherently defective and dangerous at the time that they were sold to Plaintiffs and the other Class members.

103.  Plaintiffs and the other Class members were exposed to Shimano's misrepresentations, and they had no way of discerning that Shimano's representations were false and misleading or otherwise learning the material facts that Shimano had concealed or failed to disclose. Accordingly, Plaintiffs and the other Class members reasonably relied on Shimano's express warranties when purchasing their cranksets and/or Class Bicycles.

104.  Plaintiffs and the other Class members timely provided Shimano notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

105.  Alternatively, Plaintiffs and the other Class members were excused from providing Shimano with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Shimano knew about the Defective Cranksets for years. Moreover, Shimano issued a recall, but that recall is inadequate because, *inter alia*: (a) it is belated because Shimano knew about the Defective Cranksets for years and did nothing to recall or remedy the serious safety defect; (b) with hundreds of

1  thousands of bicycles impacted in existing and potential future recalls, as a result of

2  Shimano's concealment of the Crankset Defect, the recalls cannot be implemented

3  effectively due to supply constraints and resulting delays; and (c) the recalls are

4  incomplete, and apply to only a subset of the Class Bicycles and cranksets.

5       106.   As a direct and proximate result of Shimano's breach of its express

6  warranties, the cranksets and Class Bicycles were and are defective and the Crankset

7  Defect was not remedied. Therefore, Plaintiff and the other Class members have been

8  damaged, in an amount to be proven at trial, through their overpayment at the time of

9  purchase for the cranksets and Class Bicycles with an undisclosed safety defect that

10 would not be remedied.

11 **California Count 2: Breach of Implied Warranty of Merchantability (Cal. Com.**

12 **Code §2314) Against Shimano and the Bicycle Manufacturer Defendants**

13      107.   Plaintiffs reallege and incorporate by reference Paragraphs 1-85 as though

14 fully set forth herein.

15      108.   The California Plaintiffs bring this count under California law,

16 individually and on behalf of the other members of the California Class against

17 Shimano and the Bicycle Manufacturer Defendants for their respective cranksets and

18 Class Bicycles.

19      109.   For purposes of this count, members of the California Class shall be

20 referred to as "Class Members."

21      110.   The cranksets and the Class Bicycles are "goods" under Cal. Com. Code

22 §2105(1).

23      111.   Plaintiffs and the other Class members are "buyers" of the cranksets and

24 Class Bicycles under Cal. Com. Code §2103(1)(a).

25      112.   Shimano and the Bicycle Manufacturer Defendants are "merchants" and

26 "sellers" under Cal. Com. Code §§2104(1) and 2103(1)(d).

27

28

CLASS ACTION COMPLAINT

113.    California law conferred an implied warranty that the cranksets and Class Bicycles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Cal. Com. Code §2314.

114.    The cranksets and Class Bicycles are not merchantable, and as such Shimano and the Bicycle Manufacturer Defendants breached their implied warranties, because at the time of sale and all times thereafter:

        a)    The cranksets and the Class Bicycles would not pass without objection in the bicycle trade given the Crankset Defect;

        b)    The Crankset Defect renders the cranksets and Class Bicycles unsafe to bike and unfit for ordinary purposes;

        c)    The Class Bicycles and the cranksets therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Crankset Defect; and

        d)    The cranksets and Class Bicycles do not conform to their labeling, which represents that the cranksets and bicycles are safe and suitable for their intended use.

115.    Plaintiffs and the other Class members timely provided Shimano and the Bicycle Manufacturer Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

116.    Alternatively, Plaintiffs and the other Class members were excused from providing Shimano and the Bicycle Manufacturer Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Bicycle Manufacturer Defendants have long known that the Class Bicycles contained the Defective Cranksets, and that the Defective Cranksets have caused cranksets to malfunction in crashes involving the Class Bicycles. Shimano has issued a recall, but that recall is inadequate because, *inter alia*: (a) it is belated because the Bicycle Manufacturer Defendants and Shimano knew about the Defective Cranksets for years

1    and did nothing to recall or remedy the serious safety defect; (b) with hundreds of

2    thousands of bicycles impacted in existing and potential future recalls, as a result of the

3    Bicycle Manufacturer Defendants' and Shimano's concealment of the Crankset Defect,

4    the recalls cannot be implemented effectively due to supply constraints and resulting

5    delays; and (c) the recalls are incomplete, and apply to only a subset of the Class

6    Bicycles and cranksets.

7        117.   Plaintiffs and the other Class members have had sufficient direct dealings

8    with either Defendants or their agents (retailers) to establish privity of contract between

9    Plaintiffs and the other Class members. Notwithstanding this, privity is not required in

10   this case because Plaintiffs and the other Class members are intended third-party

11   beneficiaries of contracts between Defendants and their agents; specifically, they are

12   the intended beneficiaries of Defendants' implied warranties. The retailers were not

13   intended to be the ultimate consumers of the Class Bicycles and have no rights under

14   the warranty agreements provided with the Class Bicycles; the warranty agreements

15   were designed for and intended to benefit the ultimate consumers only. Finally, privity

16   is also not required because Plaintiffs' and the other Class members' Class Bicycles

17   are   dangerous   instrumentalities   due   to   the   aforementioned   defects   and

18   nonconformities.

19       118.   Plaintiffs, individually and on behalf of Class Members, seek all available

20   monetary damages (including actual, compensatory, and punitive damages), injunctive

21   and equitable relief, and attorneys' fees and costs.

22   **California Count 3: Violations of the Song-Beverly Act (Civ. Code §§1790, _et_**

23   **_seq_.) via Breach of Implied Warranty Against Shimano and the Bicycle**

24   **Manufacturer Defendants**

25       119.   Plaintiffs reallege and incorporate by reference Paragraphs 1-85 as though

26   fully set forth herein.

27       120.   The  California  Plaintiffs  bring  this  count  under  California  law,

28   individually  and  on  behalf  of  the  other  members  of  the  California  Class  against

1  Shimano and the Bicycle Manufacturer Defendants for their respective cranksets and
2  Class Bicycles.

3      121.   Cal. Civ. Code §1792 provides that, unless properly disclaimed, every sale
4  of consumer goods is accompanied by an implied warranty of merchantability.
5  Shimano and the Bicycle Manufacturer Defendants did not at any time properly
6  disclaim the warranty.

7      122.   The cranksets and Class Bicycles are "consumer goods" under Cal. Civ.
8  Code §1791(a).

9      123.   Plaintiffs and the other Class members are "buyers" under Cal. Civ. Code
10 §1791(b).

11     124.   Shimano    and    the    Bicycle    Manufacturer    Defendants    are    the
12 "manufacturers" and "sellers" of the cranksets and Class Bicycles under Cal. Civ. Code
13 §§1791(j) and (l).

14     125.   Shimano and the Bicycle Manufacturer Defendants knew of the particular
15 purposes for which the Class Bicycles and the Defective Cranksets were intended and
16 impliedly warranted to Plaintiffs and the other Class members that cranksets and the
17 Class Bicycles (all of which were equipped with a Defective Crankset) were
18 "merchantable" under Cal. Civ. Code §§1791.1(a) and 1792.

19     126.   The cranksets and Class Bicycles are not merchantable, and as such
20 Shimano and the Bicycle Manufacturer Defendants breached their implied warranties,
21 because:

22         a)   The cranksets and Class Bicycles would not pass without objection
23              in the bicycle trade because they either are equipped with Defective
24              Cranksets or are defective;
25         b)   The Crankset Defect renders the bicycles unsafe to bike and unfit
26              for ordinary purposes;

27
28

CLASS ACTION COMPLAINT

c) The Class Bicycles and the cranksets therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Crankset Defect; and

d) The cranksets and Class Bicycles do not conform to their labeling, which represents that the cranksets and bicycles are safe and suitable for their intended use.

127. Plaintiffs and the other Class members received the cranksets and Class Bicycles in a condition which substantially diminishes their value, and which prevents the cranksets and bicycles from safely and properly functioning. As a result of the Shimano's and the Bicycle Manufacturer Defendants' failure to comply with their statutory obligations, Plaintiffs are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their cranksets and/or bicycles, or the overpayment or diminution in value of their cranksets and bicycles.

128. Plaintiffs, individually and on behalf of the other Class members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

**California Count 4: Violations of California's Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §§1750, *et seq.*) Against All Defendants**

129. Plaintiffs reallege and incorporate by reference Paragraphs 1-85 as though fully set forth herein.

130. The California Plaintiffs bring this count under California law, individually and on behalf of the other members of the California Class against Shimano and the Bicycle Manufacturer Defendants for their respective cranksets and Class Bicycles.

131. Defendants are "persons" under Cal. Civ. Code §1761(c).

132. Plaintiffs and the other Class members are "consumers" under Cal. Civ. Code §1761(d) because they purchased the cranksets and/or Class Bicycles primarily for personal, family, or household use.

1    133.    The purchase of the cranksets and/or Class Bicycles by Plaintiffs and the
2    other Class members constitute "transactions" within the meaning of Cal. Civ. Code
3    §1761(e).

4    134.    The cranksets and the Class Bicycles are "goods" under Cal. Civ. Code
5    §1761(a).

6    135.    Defendants' violations of the CLRA occurred repeatedly in their trade or
7    practice – including the design, manufacture, distribution, marketing, and sale of the
8    Defective Cranksets and the Class Bicycles.

9    136.    Defendants, through their agents, employees, and/or subsidiaries, violated
10    the CLRA by knowingly and intentionally misrepresenting, omitting, concealing,
11    and/or failing to disclose material facts regarding the reliability, safety, and
12    performance of the Class Bicycles and the Defective Cranksets, as detailed above.

13    137.    Defendants had an ongoing duty to Plaintiffs and the other Class members
14    to refrain from unfair or deceptive practices under the CLRA in the course of their
15    business. Specifically, Defendants owed Plaintiffs and the other Class members a duty
16    to disclose all the material facts concerning the Defective Cranksets and the Defective
17    Cranksets in the Class Bicycles because:

18        a) Given the Bicycle Manufacturer Defendants' role in the design,
19            manufacture, testing, and sale of Class Bicycles and Defective Cranksets,
20            and their experience and knowledge as experts and long-time veterans of
21            the bicycle industry, they, along with Shimano, possessed exclusive
22            access to and were in a superior position to know the true facts about the
23            Defective Cranksets;

24        b) Given Shimano's design, development, testing, and manufacture of the
25            Defective Cranksets and its experience and knowledge as experts and
26            long-time veterans of the bicycle industry, it, along with the Bicycle
27            Manufacturer Defendants, possessed exclusive access to and was in a
28            superior position to know the true facts about the Defective Cranksets;

c) Given the Crankset Defect's hidden and technical nature, Plaintiffs and the other Class members lack the sophisticated expertise in bicycle components and technology that would be necessary to discover the Crankset Defect on their own;

d) Defendants knew that the Crankset Defect gave rise to serious safety concerns for the consumers who purchased the Class Bicycles;

e) The Crankset Defect poses a severe risk of harm in that, among other things, the recalled bonded crank parts can separate and break, causing severe injuries, including bone fractures, joint displacement and lacerations, and potentially fatal injuries;

f) Defendants knew about and investigated the Crankset Defect, but then did not notify consumers about it until Shimano announced a recall on September 21, 2023, and the Bicycle Manufacturer Defendants did not launch a comprehensive recall for all Class Bicycles, all of which individually and together deprived Plaintiffs and the other Class members of an opportunity that otherwise could have led them to discover the truth about the Crankset Defect in their Class Bicycles; and

g) The Bicycle Manufacturer Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Bicycles and their cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Bicycles that they marketed and offered for sale to consumers, the Bicycle Manufacturer Defendants had the duty to disclose the whole truth.

h) Shimano made, helped to make, or conspired to make incomplete representations about the safety and reliability of their cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Defective

- 38 -

CLASS ACTION COMPLAINT

1    Cranksets that they marketed and offered for sale to consumers, Shimano
2    had the duty to disclose the whole truth.

3    138. By misrepresenting the cranksets and Class Bicycles as safe and reliable
4  and the cranksets installed in them as properly functioning and free from defects, and/or
5  by failing to disclose and actively concealing the dangers and risk posed by the
6  Crankset Defect to consumers, Defendants engaged in one or more of the following
7  unfair or deceptive business practices as defined in Cal. Civ. Code §1770(a):

8         a)     Representing that the Class Bicycles and/or the Defective Cranksets
9                had a characteristic that they did not actually have – *i.e.*, that the bicycles
10               were safe and suitable for use on the sidewalks, roadway, and other
11               bikeable surfaces, when, in fact, they were not because their cranksets
12               were defectively designed such that they had an unreasonably dangerous
13               propensity to separate and break, causing severe and fatal injuries;

14        b)     Representing that the Class Bicycles and the Defective Cranksets
15               were of a particular quality, grade, or standard when, in fact, they were
16               not of that quality, grade, or standard;

17        c)     Concealing and failing to disclose that the Class Bicycles' cranksets
18               were inherently defective, defectively designed, and not suitable for their
19               intended use despite advertising them as safe and suitable for their
20               intended function; and

21        d)     Failing to market, distribute, and sell the Class Bicycles equipped
22               with Defective Cranksets in accordance with Defendants' previous
23               representations – *i.e.*, that the Class Bicycles were safe and suitable for
24               their intended use, when, in fact, they were not because of the Crankset
25               Defect.

26    139. Defendants' unfair or deceptive acts or practices, including their
27  misrepresentations, concealments, omissions, and/or suppressions of material facts,
28  were designed to mislead and had a tendency or capacity to mislead and create a false

impression in consumers that the Class Bicycles had properly-functioning and reliable cranksets and the cranksets would properly function and be reliable. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and the other Class members, about the true safety and reliability of the cranksets and Class Bicycles and/or the Defective Cranksets installed in them, the quality of the Class Bicycles and cranksets, and the true value of the Class Bicycles and the cranksets.

140.   Defendants intended for Plaintiffs and the other Class members to rely on their misrepresentations, omissions, and concealment – which they did by purchasing the cranksets and Class Bicycles at the prices they paid believing that their cranksets and bicycles would not have a Crankset Defect that would affect the quality, reliability, and safety of the Class Bicycles and their cranksets.

141.   Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Crankset Defect and true characteristics of the cranksets and Class Bicycles were material to the decisions of Plaintiffs and the other Class members to purchase those cranksets and bicycles, as Defendants intended. Plaintiffs and the other Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Bicycles and their cranksets were safe and reliable in deciding to purchase the Class Bicycles and cranksets.

142.   Plaintiffs' and the other Class members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and the other Class members did not, and could not, unravel Defendants' deception on their own.

143.   Had they known the truth about the Crankset Defect, Plaintiffs and the other Class members would not have purchased the cranksets and/or Class Bicycles, or would have paid significantly less for them.

144. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and the other Class members have sustained economic injury and loss – either by purchasing a crankset or bicycle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above – that first occurred at the time each crankset and/or Class Bicycle was purchased.

145. Defendants' violations present a continuing risk to Plaintiffs and the other Class members, as well as to the general public, because the cranksets and Class Bicycles remain unsafe due to the Crankset Defect therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

146. Plaintiffs and the other Class members provided Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure pursuant to Cal. Civ. Code §1782 on October 4, 2023. Plaintiffs' and the other Class members' claims against them under this count right now are for injunctive relief only. If these Defendants fail to correct or agree to correct the actions described in the notice letter, Plaintiffs will amend this Complaint to include all compensatory and monetary damages against them to which Plaintiffs and the other Class members are entitled.

147. Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the other Class members seek an order enjoining the above unfair or deceptive acts or practices and awarding attorneys' fees, and any other just and proper relief available under the CLRA against all Defendants.

**California Count 5: False Advertising Under the California False Advertising Law (Cal. Bus. & Prof. Code §§17500, *et seq.*) Against Shimano and the Bicycle Manufacturer Defendants**

148. Plaintiffs reallege and incorporate by reference Paragraphs 1-85 as though fully set forth herein.

149. The California Plaintiffs bring this count under California law, individually and on behalf of the other members of the California Class against

1  Shimano and the Bicycle Manufacturer Defendants for their respective cranksets and
2  Class Bicycles.

3      150.   Shimano, the Bicycle Manufacturer Defendants, Plaintiffs, and the other
4  Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

5      151.   The California False Advertising Law ("California FAL") prohibits false
6  advertising. California Bus. & Prof. Code §17500.

7      152.   In the course of their business, Shimano, the Bicycle Manufacturer
8  Defendants, through their agents, employees, and/or subsidiaries, violated the
9  California FAL by knowingly and intentionally misrepresenting, omitting, concealing,
10  and/or failing to disclose material facts regarding the quality, reliability, and safety of
11  the cranksets, Class Bicycles and the Crankset Defect, as detailed above.

12      153.   Shimano and the Bicycle Manufacturer Defendants had an ongoing duty
13  to Plaintiffs and the other Class members to refrain from unfair or deceptive practices
14  under the California FAL in the course of their business. Specifically, they owed
15  Plaintiffs and the other Class members a duty to disclose all the material facts
16  concerning the Crankset Defect in the cranksets and Class Bicycles because:

17          a)     Given their role in the design, manufacture and sale of the Defective
18          Cranksets and Class Bicycles, and their experience and knowledge as
19          experts and long-time veterans of the bicycle industry, the Bicycle
20          Manufacturer Defendants possessed exclusive access to and were in a
21          superior position to know the true facts about the Defective Cranksets;

22          b)     Given the Crankset Defect's hidden and technical nature, Plaintiffs
23          and the other Class members lack the sophisticated expertise in bicycle
24          components and technology that would be necessary to discover the
25          Crankset Defect on their own;

26          c)     Shimano and the Bicycle Manufacturer Defendants knew that the
27          Crankset Defect gave rise to serious safety concerns for the consumers
28          who purchased the cranksets and/or Class Bicycles;

d)      The Crankset Defect poses a severe risk of harm in that, among other things, the recalled bonded crank parts can separate and break, causing severe injuries, including bone fractures, joint displacement and lacerations, and potentially fatal injuries;

e)      Shimano and the Bicycle Manufacturer Defendants knew about and investigated the Crankset Defect, but then did not notify consumers about it until Shimano announced a recall on September 21, 2023, and the Bicycle Manufacturer Defendants did not launch a comprehensive recall for all Class Bicycles, all of which individually and together deprived Plaintiffs and the other Class members of an opportunity that otherwise could have led them to discover the truth about the Crankset Defect; and

f)      The Bicycle Manufacturer Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Bicycles and their cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Bicycles that they marketed and offered for sale to consumers, the Bicycle Manufacturer Defendants had the duty to disclose the whole truth.

g)      Shimano made, helped to make, or conspired to make incomplete representations about the safety and reliability of their cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Defective Cranksets that they marketed and offered for sale to consumers, Shimano had the duty to disclose the whole truth.

154.   By misrepresenting the cranksets and Class Bicycles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Crankset Defect to consumers, Shimano and the Bicycle

CLASS ACTION COMPLAINT

Manufacturer Defendants engaged in untrue and misleading advertising prohibited by California Bus. & Prof. Code §17500.

155.    Shimano and the Bicycle Manufacturer Defendants made or caused to be made and disseminated throughout California advertising, marketing, labeling, and other publications containing numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care they should have been known to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

156.    Shimano's and the Bicycle Manufacturer Defendants' unfair or deceptive acts and practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the cranksets and Class Bicycles were safe, secure, and reliable, and that they did not contain the Crankset Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and the other Class members, about the true safety and reliability of the cranksets and Class Bicycles, the quality of the cranksets and Class Bicycles and their brands, and the true value of the cranksets and Class Bicycles.

157.    Defendants intended for Plaintiffs and the other Class members to rely on their misrepresentations, omissions, and concealment – which they did by purchasing the cranksets and Class Bicycles at the prices they paid believing that their cranksets and bicycles would not have a Crankset Defect that would affect the quality, reliability, and safety of the Class Bicycles and their cranksets.

158.    Shimano and the Bicycle Manufacturer Defendants' misrepresentations, omissions, and concealment of material facts regarding the Crankset Defect and true characteristics of the cranksets and Class Bicycles were material to the decisions of Plaintiffs and the other Class members to purchase those cranksets and bicycles, as Shimano and the Bicycle Manufacturer Defendants intended. Plaintiffs and the other

- 44 -

CLASS ACTION COMPLAINT

1  Class members were exposed to those misrepresentations, concealments, omissions,
2  and suppressions of material facts, and relied on Shimano's and the Bicycle
3  Manufacturer Defendants' misrepresentations and omissions that the cranksets and
4  Class Bicycles were safe, secure, and reliable in deciding to purchase those cranksets
5  and bicycles.

6      159.   Plaintiffs' and the other Class members' reliance was reasonable, as they
7  had no way of discerning that those representations were false and misleading, or
8  otherwise learning the facts that Shimano and the Bicycle Manufacturer Defendants
9  had concealed or failed to disclose. Plaintiffs and the other Class members did not, and
10 could not, unravel Shimano's and the Bicycle Manufacturer Defendants' deception on
11 their own.

12     160.   Had Plaintiffs and the other Class members known the truth about the
13 Crankset Defect, they would not have purchased the cranksets and/or Class Bicycles,
14 or would have paid significantly less for them.

15     161.   Plaintiffs and the other Class members suffered ascertainable losses and
16 actual damages as a direct and proximate result of Shimano's and the Bicycle
17 Manufacturer Defendants' concealment, misrepresentations, and/or failure to disclose
18 material information.

19     162.   Shimano's and the Bicycle Manufacturer Defendants' violations present
20 a continuing risk to Plaintiffs and the other Class members, as well as to the general
21 public, because the cranksets and Class Bicycles remain unsafe due to the Crankset
22 Defect. The unlawful acts and practices complained of herein affect the public interest.

23     163.   Plaintiffs and the other Class members seek an order enjoining Shimano
24 and the Bicycle Manufacturer Defendants' false advertising, any such orders or
25 judgments as may be necessary to restore to Plaintiffs and the other Class members any
26 money acquired by unfair competition, including restitution and/or restitutionary
27 disgorgement, and any other just and proper relief available under the false advertising
28 provisions of the California FAL.

CLASS ACTION COMPLAINT

164.   Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Federal Rule of Civil Procedure 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of Shimano and the Bicycle Manufacturer Defendants, Plaintiffs will have no adequate legal remedy.

**California Count 6: Violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§17200, *et seq.*) Against All Defendants**

165.   Plaintiffs reallege and incorporate by reference Paragraphs 1-85 as though fully set forth herein.

166.   The California Plaintiffs bring this count under California law, individually and on behalf of the other members of the California Class against the Bicycle Manufacturer Defendants and Shimano.

167.   California's Unfair Competition Law ("UCL") prohibits "unfair [business] competition," including any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §17200.

168.   Defendants committed an unlawful business act or practice in violation of §17200 by violating the California FAL and CLRA, California Commercial Code, and Song-Beverly Consumer Warranty Act, and other laws alleged herein.

169.   Defendants committed fraudulent acts or practices in violation of §17200. Specifically, as alleged in detail above, Defendants designed, developed, tested, manufactured, and/or installed Defective Cranksets into the Class Bicycles, knowingly and intentionally marketed and sold those cranksets and Class Bicycles with the Defective Cranksets while misrepresenting the safety of the cranksets and Class Bicycles, and/or omitting, and failing to disclose material facts regarding the existence, nature, and scope of the Crankset Defect from consumers, including the Plaintiffs and the other Class members, while under a duty to disclose those material facts.

1     170.   Defendants' unfair or deceptive acts or practices were designed to mislead

2  and had a tendency or capacity to mislead and create a false impression in consumers

3  that the Class Bicycles had properly-functioning and reliable cranksets and the

4  cranksets would properly function and be reliable, and that the cranksets and Class

5  Bicycles did not contain Defective Cranksets. Indeed, those misrepresentations,

6  concealments, omissions, and suppressions of material facts did in fact deceive

7  reasonable consumers, including Plaintiffs and the other Class members, about the true

8  safety and reliability of the cranksets and Class Bicycles, the Defective Cranksets

9  installed in them, the quality of the Class Bicycles and cranksets, and the true value of

10  the Class Bicycles and the cranksets.

11     171.  Defendants'  misrepresentations,  concealments,  omissions,  and

12  suppressions of material facts regarding the Crankset Defect and true characteristics of

13  the cranksets and Class Bicycles were material to the decisions of Plaintiffs and the

14  other Class members to purchase those cranksets and bicycles, as Defendants intended.

15  Plaintiffs and the other Class members were exposed to those misrepresentations,

16  concealments, omissions, and suppressions of material facts, and relied on Defendants'

17  misrepresentations that the Class Bicycles and their cranksets were safe and reliable in

18  deciding to purchase the Class Bicycles and cranksets.

19     172.   Plaintiffs' and the other Class members' reliance was reasonable, as they

20  had no way of discerning Defendants' representations were false and misleading, or

21  otherwise learning that the Class Bicycles and cranksets contained the Crankset Defect,

22  as alleged above. Plaintiffs and the other Class members did not, and could not, unravel

23  Defendants' deception on their own.

24     173.   Had they known the truth about the Crankset Defect, Plaintiffs and the

25  other Class members would not have purchased the cranksets and/or Class Bicycles, or

26  would have paid significantly less for them.

27     174.   Additionally, Defendants committed unfair business acts and practices in

28  violation of §17200 when they concealed the existence and nature of the Crankset

Defect and the dangers and risks posed by the Class Bicycles and the Defective Cranksets from consumers while misrepresenting or conspiring to misrepresent that the Class Bicycles and the Defective Cranksets were reliable and safe when, in fact, they are not. These acts and practices offend established public policy and the harm they cause to consumers greatly outweighs any benefits associated with those practices. Defendants' conduct has also impaired competition within the bicycle market and has prevented Plaintiffs and the other Class members from making fully informed decisions about whether to purchase the Class Bicycles and/or cranksets and/or the price to be paid to purchase them.

175.    Plaintiffs and the other Class members suffered ascertainable losses as a direct and proximate result of Defendants' unlawful, fraudulent, and unfair business acts and practices.

176.    Defendants' acts and practices described above present a continuing risk to Plaintiffs and the other Class members, as well as to the general public, because the Class Bicycles and cranksets remain unsafe due to the Defective Cranksets therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

177.    Pursuant to Cal. Bus. & Prof. Code §17200, Plaintiffs and the other Class members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to them any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code §17203, and any other just and proper relief available under the California UCL.

178.    Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Federal Rule of Civil Procedure 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**California Count 7: Unjust Enrichment Against Shimano and the Bicycle Manufacturer Defendants**

179.   Plaintiffs reallege and incorporate by reference Paragraphs 1-85 as though fully set forth herein.

180.   The California Plaintiffs bring this count under California law, individually and on behalf of the other members of the California Class against Shimano and the Bicycle Manufacturer Defendants for their respective cranksets and Class Bicycles.

181.   When they purchased cranksets or the Class Bicycles, Plaintiffs and the other Class members conferred tangible and material economic benefits upon Shimano and/or the Bicycle Manufacturer Defendants, who readily accepted and retained these benefits.

182.   Plaintiffs and the other Class members would not have purchased their cranksets and/or Class Bicycles, or would have paid less for them, had they known of the Crankset Defect at the time of purchase. Therefore, Shimano and the Bicycle Manufacturer Defendants profited from the sale of the cranksets and Class Bicycles to the detriment and expense of Plaintiffs and the other Class members.

183.   Shimano and the Bicycle Manufacturer Defendants appreciated these economic benefits. These benefits were the expected result of Shimano and the Bicycle Manufacturer Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Crankset Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and the other Class members regarding the nature and quality of the cranksets and/or Class Bicycles while profiting from this deception.

184.   It would be unjust, inequitable, and unconscionable for Shimano and the Bicycle Manufacturer Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

185.   Plaintiffs and the other Class members are entitled to restitution of the benefits Shimano and the Bicycle Manufacturer Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and the other Class members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

186.   Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Federal Rule of Civil Procedure 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of Shimano and the Bicycle Manufacturer Defendants, Plaintiffs will have no adequate legal remedy.

## Florida Count 1: Breach of Express Warranty (Fla. Stat. §672.313) Against Shimano

187.   Plaintiffs reallege and incorporate by reference Paragraphs 1-85 as though fully set forth herein.

188.   Maurice Scorsolini (the "Florida Plaintiff") brings this count under Florida law, individually and on behalf of the other members of the Florida Class against Shimano.

189.   The cranksets and the Class Bicycles are "goods" under Fla. Stat. §672.105(1).

190.   Shimano is a "merchant" and "seller" of the cranksets under Fla. Stat. §§672.104(1) and 672.103(1)(d), respectively.

191.   Plaintiff and the other Class members who purchased the cranksets and Class Bicycles in Florida are "buyers" under Fla. Stat. §672.103(1)(a).

192.   Shimano issued an express written warranty for each defective crankset they sold, including that:

> a)   The cranksets would be free of defects in materials and workmanship at the time of sale; and

b)    The cranksets were safe and reliable, and their cranksets would function properly during the operation of the bicycles.

193.    The warranties listed above formed the basis of the bargain with regard to Plaintiff's and the other Class members' purchase of the cranksets and Class Bicycles.

194.    Shimano knowingly breached its warranty for the cranksets because:

a)    The cranksets have latent defects which have a dangerous propensity to cause the bonded crank parts to separate and break, subjecting Plaintiff and the other Class members to the risk of loss and injury; and

b)    Shimano denied, concealed, and misrepresented the Crankset Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiff and the other Class members.

195.    Shimano knew or should have known that the warranties were false and/or misleading. Specifically, Shimano was aware of the Crankset Defect, which made the bicycles inherently defective and dangerous at the time that they were sold to Plaintiff and the other Class members.

196.    Plaintiff and the other Class members were exposed to Shimano's misrepresentations, and they had no way of discerning that Shimano's representations were false and misleading or otherwise learning the material facts that Shimano had concealed or failed to disclose. Accordingly, Plaintiff and the other Class members reasonably relied on Shimano's express warranties when purchasing their cranksets and/or Class Bicycles.

197.    Plaintiff and the other Class members timely provided Shimano notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

198.    Alternatively, Plaintiff and the other Class members were excused from providing Shimano with notice and an opportunity to cure the breach, because it would

1    have been futile. As alleged above, Shimano knew about the Defective Cranksets for

2    years. Moreover, Shimano issued a recall, but that recall is inadequate because, *inter*

3    *alia*: (a) it is belated because Shimano knew about the Defective Cranksets for years

4    and did nothing to recall or remedy the serious safety defect; (b) with hundreds of

5    thousands of bicycles impacted in existing and potential future recalls, as a result of

6    Shimano's concealment of the Crankset Defect, the recalls cannot be implemented

7    effectively due to supply constraints and resulting delays; and (c) the recalls are

8    incomplete, and apply to only a subset of the Class Bicycles and cranksets.

9         199.   As a direct and proximate result of Shimano's breach of their express

10   warranties, the Class Bicycles were and are defective and the Crankset Defect was not

11   remedied. Therefore, Plaintiff and the other Class members have been damaged, in an

12   amount to be proven at trial, through their overpayment at the time of purchase for

13   crankset and the Class Bicycles with an undisclosed safety defect that would not be

14   remedied.

15   **Florida Count 2: Breach of Implied Warranty of Merchantability (Fla. Stat.**

16   **§672.314) Against Shimano and the Bicycle Manufacturer Defendants**

17        200.   Plaintiffs reallege and incorporate by reference Paragraphs 1-85 as though

18   fully set forth herein.

19        201.   The Florida Plaintiff brings this count under Florida law, individually and

20   on behalf of the other members of the Florida Class against Shimano and the Bicycle

21   Manufacturer Defendants for their respective cranksets and Class Bicycles.

22        202.   The cranksets and the Class Bicycles are "goods" under Fla. Stat.

23   §672.105(1).

24        203.   Shimano and the Bicycle Manufacturer Defendants are "merchants" and

25   "sellers" of the cranksets and Class Bicycles under Fla. Stat. Code §§672.104(1) and

26   672.103(1)(d), respectively.

27        204.   Plaintiff and the other Class members who purchased the cranksets and

28   Class Bicycles in Florida are "buyers" under Fla. Stat. §672.103(1)(a).

205.   Florida law conferred an implied warranty that the cranksets and Class Bicycles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Fla. Stat. §672.314.

206.   The cranksets and Class Bicycles are not merchantable, and as such Shimano and the Bicycle Manufacturer Defendants breached their implied warranties, because at the time of sale and all times thereafter:

> a)    The cranksets and the Class Bicycles would not pass without objection in the bicycle trade given the Crankset Defect;

> b)    The Crankset Defect renders the cranksets and Class Bicycles unsafe to bike and unfit for ordinary purposes;

> c)    The Class Bicycles and the cranksets therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Crankset Defect; and

> d)    The cranksets and Class Bicycles do not conform to their labeling, which represents that the cranksets and bicycles are safe and suitable for their intended use.

207.   Plaintiff and the other Class members timely provided Shimano and the Bicycle Manufacturer Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

208.   Alternatively, Plaintiff and the other Class members were excused from providing Shimano with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Shimano knew about the Defective Cranksets for years. Shimano has issued a recall, but that recall is inadequate because, *inter alia*: (a) they are belated because Shimano and the Bicycle Manufacturer Defendants knew about the Defective Cranksets for years and did nothing to recall or remedy the serious safety defect; (b) with hundreds of thousands of bicycles impacted in existing and potential future recalls, as a result of the Bicycle Manufacturer Defendants'

concealment of the Crankset Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; and (c) the recalls are incomplete, and apply to only a subset of the Class Bicycles and cranksets.

209.   Plaintiff and the other Class members have had sufficient direct dealings with either Defendants or their agents (retailers) to establish privity of contract between Plaintiff and the other Class members. Notwithstanding this, privity is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Defendants and their agents; specifically, they are the intended beneficiaries of Defendants' implied warranties. The retailers were not intended to be the ultimate consumers of the Class Bicycles and have no rights under the warranty agreements provided with the Class Bicycles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiff's and the other Class members' Class Bicycles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

210.   Plaintiff, individually and on behalf of the other Class members, seeks all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### Florida Count 3: Violations of the Florida Deceptive & Unfair Trade Practices Act (Fla. Stat. §§501.201, *et seq.*) Against All Defendants

211.   Plaintiffs reallege and incorporate by reference Paragraphs 1-85 as though fully set forth herein.

212.   The Florida Plaintiff brings this count under Florida law, individually and on behalf of the other members of the Florida Class against Shimano and the Bicycle Manufacturer Defendants for their respective cranksets and Class Bicycles.

213.   Plaintiff and the other Class members are "consumers" under Fla. Stat. §501.203(7) because they purchased the cranksets and/or Class Bicycles primarily for personal, family, or household use.

214. Defendants were and are engaged in "trade or commerce" under the meaning of Fla. Stat. §501.203(8).

215. The Florida Unfair and Deceptive Trade Practices Act ("Florida UDTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.204(1).

216. Defendants' violations of the Florida UDTPA occurred repeatedly in their trade or practice – including the design, manufacture, distribution, marketing, and sale of the Defective Cranksets and the Class Bicycles.

217. Defendants, through their agents, employees, and/or subsidiaries, violated the Florida UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Bicycles and the Defective Cranksets, as detailed above.

218. Defendants had an ongoing duty to Plaintiff and the other Class members to refrain from unfair or deceptive practices under the Florida UDTPA in the course of their business. Specifically, Defendants owed Plaintiff and the other Class members a duty to disclose all the material facts concerning the Defective Cranksets and the Defective Cranksets in the Class Bicycles because:

   a)    Given the Bicycle Manufacturer Defendants' role in the design, manufacture, testing, and sale of Class Bicycles and Defective Cranksets, and their experience and knowledge as experts and long-time veterans of the bicycle industry, they, along with Shimano, possessed exclusive access to and were in a superior position to know the true facts about the Defective Cranksets;

   b)    Given Shimano's design, development, testing, and manufacture of the Defective Cranksets and its experience and knowledge as experts and long-time veterans of the bicycle industry, it, along with the Bicycle

CLASS ACTION COMPLAINT

Manufacturer Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Cranksets;

c)    Given the Crankset Defect's hidden and technical nature, Plaintiff and the other Class members lack the sophisticated expertise in bicycle components and technology that would be necessary to discover the Crankset Defect on their own;

d)    Defendants knew that the Crankset Defect gave rise to serious safety concerns for the consumers who purchased the Class Bicycles;

e)    The Crankset Defect poses a severe risk of harm in that, among other things, the recalled bonded crank parts can separate and break, causing severe injuries, including bone fractures, joint displacement and lacerations, and potentially fatal injuries;

f)    Defendants knew about and investigated the Crankset Defect, but then did not notify consumers about it until Shimano announced a recall on September 21, 2023, and the Bicycle Manufacturer Defendants did not launch a comprehensive recall for all Class Bicycles, all of which individually and together deprived Plaintiff and the other Class members of an opportunity that otherwise could have led them to discover the truth about the Crankset Defect in their Class Bicycles; and

g)    The Bicycle Manufacturer Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Bicycles and their cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Bicycles that they marketed and offered for sale to consumers, the Bicycle Manufacturer Defendants had the duty to disclose the whole truth.

h)    Shimano made, helped to make, or conspired to make incomplete representations about the safety and reliability of their cranksets, while

purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Defective Cranksets that they marketed and offered for sale to consumers, Shimano had the duty to disclose the whole truth.

219. By misrepresenting the Class Bicycles as safe and reliable and the cranksets installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Crankset Defect to consumers, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as prohibited by Fla. Stat. §501.204(1).

220. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Bicycles had properly-functioning and reliable cranksets and the cranksets would properly function and be reliable. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiff and the other Class members, about the true safety and reliability of the cranksets and Class Bicycles and/or the Defective Cranksets installed in them, the quality of the Class Bicycles and cranksets, and the true value of the Class Bicycles and the cranksets.

221. Defendants intended for Plaintiff and the other Class members to rely on their misrepresentations, omissions, and concealment – which they did by purchasing the cranksets and Class Bicycles at the prices they paid believing that their cranksets and bicycles would not have a Crankset Defect that would affect the quality, reliability, and safety of the Class Bicycles and their cranksets.

222. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Crankset Defect and true characteristics of the cranksets and Class Bicycles were material to the decisions of Plaintiff and the

other Class members to purchase those cranksets and bicycles, as Defendants intended. Plaintiff and the other Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Bicycles and their cranksets were safe and reliable in deciding to purchase the Class Bicycles and cranksets.

223.   Plaintiff's and the other Class members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and the other Class members did not, and could not, unravel Defendants' deception on their own.

224.   Had they known the truth about the Crankset Defect, Plaintiff and the other Class members would not have purchased the cranksets and/or Class Bicycles, or would have paid significantly less for them.

225.   As a direct and proximate result of Defendants' deceptive practices, Plaintiff and the other Class members have sustained economic injury and loss – either by purchasing a crankset or bicycle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above – that first occurred at the time each crankset and/or Class Bicycle was purchased.

226.   Defendants' violations present a continuing risk to Plaintiff and the other Class members, as well as to the general public, because the Class Bicycles and cranksets remain unsafe due to the Defective Cranksets therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

227.   Pursuant to Fla. Stat. §501.211, Plaintiff and the other Class members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Florida UDTPA against all Defendants.

## Florida Count 4: Unjust Enrichment Against Shimano and the Bicycle Manufacturer Defendants

228.    Plaintiffs reallege and incorporate by reference Paragraphs 1-85 as though fully set forth herein.

229.    The Florida Plaintiff brings this count under Florida law, individually and on behalf of the other members of the Florida Class against Shimano and the Bicycle Manufacturer Defendants for their respective cranksets and Class Bicycles.

230.    When they purchased cranksets or the Class Bicycles, Plaintiff and the other Class members conferred tangible and material economic benefits upon Shimano and/or the Bicycle Manufacturer Defendants, who readily accepted and retained these benefits.

231.    Plaintiff and the other Class members would not have purchased their cranksets and/or Class Bicycles, or would have paid less for them, had they known of the Crankset Defect at the time of purchase. Therefore, Shimano and the Bicycle Manufacturer Defendants profited from the sale of the cranksets and Class Bicycles to the detriment and expense of Plaintiff and the other Class members.

232.    Shimano and the Bicycle Manufacturer Defendants appreciated these economic benefits. These benefits were the expected result of Shimano and the Bicycle Manufacturer Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Crankset Defect, yet they failed to disclose this knowledge and misled Plaintiff and the other Class members regarding the nature and quality of the cranksets and/or Class Bicycles while profiting from this deception.

233.    It would be unjust, inequitable, and unconscionable for Shimano and the Bicycle Manufacturer Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

234.    Plaintiff and the other Class members are entitled to restitution of the benefits Shimano and the Bicycle Manufacturer Defendants unjustly retained and/or

1    any amounts necessary to return Plaintiff and the other Class members to the position
2    they occupied prior to dealing with those Defendants, with such amounts to be
3    determined at trial.

4        235.   Plaintiff pleads this claim separately as well as in the alternative to his
5    claims for damages under Federal Rule of Civil Procedure 8(a)(3), because if the Court
6    dismisses Plaintiff's claims for damages and enters judgment on them in favor of
7    Shimano and the Bicycle Manufacturer Defendants, Plaintiffs will have no adequate
8    legal remedy.

9    **Illinois Count 1: Breach of Express Warranty (810 Ill. Comp. Stat. 5/2-313)**
10                              **Against Shimano**

11       236.   Plaintiffs reallege and incorporate by reference Paragraphs 1-85 as though
12   fully set forth herein.

13       237.   Marcus Lewis (the "Illinois Plaintiff") brings this count under Illinois law,
14   individually and on behalf of the other members of the Illinois Class against Shimano.

15       238.   Shimano is and was at all relevant times a "merchant" with respect to
16   cranksets under 810 Ill. Comp. Stat. 5/2-104(1) and 5/2A-103(3), and "sellers" of
17   cranksets under 5/2-103(1)(d).

18       239.   All Class members who purchased cranksets and Class Bicycles in Illinois
19   are "buyers" within the meaning of 810 Ill. Comp. Stat. 5/2-103(1)(a).

20       240.   The cranksets and Class Bicycles are and were at all relevant times
21   "goods" within the meaning of 810 Ill. Comp. Stat. 5/2-105(1).

22       241.   Shimano issued an express written warranty for each defective crankset
23   they sold, including that:

24              a)    The cranksets would be free of defects in materials and
25              workmanship at the time of sale; and
26              b)    The cranksets were safe and reliable, and their cranksets would
27              function properly during the operation of the bicycles.

28

242.    The warranties listed above formed the basis of the bargain with regard to Plaintiff's and the other Class members' purchase of the cranksets and Class Bicycles.

243.    Shimano knowingly breached its warranty for the cranksets because:

    a)    The cranksets have latent defects which have a dangerous propensity to cause the bonded crank parts to separate and break, subjecting Plaintiff and the other Class members to the risk of loss and injury; and

    b)    Shimano denied, concealed, and misrepresented the Crankset Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiff and the other Class members.

244.    Shimano knew or should have known that the warranties were false and/or misleading. Specifically, Shimano was aware of the Crankset Defect, which made the cranksets inherently defective and dangerous at the time that they were sold to Plaintiff and the other Class members.

245.    Plaintiff and the other Class members were exposed to Shimano's misrepresentations, and they had no way of discerning that Shimano's representations were false and misleading or otherwise learning the material facts that Shimano had concealed or failed to disclose. Accordingly, Plaintiff and the other Class members reasonably relied on Shimano's express warranties when purchasing their cranksets and/or Class Bicycles.

246.    Plaintiff and the other Class members timely provided Shimano notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

247.    Alternatively, Plaintiff and the other Class members were excused from providing Shimano with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Shimano knew about the Defective Cranksets for years. Shimano issued a recall, but that recall is inadequate because, *inter alia*: (a) it is

belated because Shimano knew about the Defective Cranksets for years and did nothing to recall or remedy the serious safety defect; (b) with hundreds of thousands of bicycles impacted in existing and potential future recalls, as a result of Shimano's concealment of the Crankset Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Bicycles and cranksets.

248.   As a direct and proximate result of Shimano's breach of their express warranties, the cranksets and Class Bicycles were and are defective and the Crankset Defect was not remedied. Therefore, Plaintiff and the other Class members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the cranksets and Class Bicycles with an undisclosed safety defect that would not be remedied.

**Illinois Count 2: Breach of Implied Warranty of Merchantability (810 Ill. Comp. Stat. 5/2-314) Against Shimano and the Bicycle Manufacturer Defendants**

249.   Plaintiffs reallege and incorporate by reference Paragraphs 1-85 as though fully set forth herein.

250.   The Illinois Plaintiff brings this count under Illinois law, individually and on behalf of the other members of the Illinois Class against Shimano and the Bicycle Manufacturer Defendants for their respective cranksets and Class Bicycles.

251.   A warranty that the cranksets and Class Bicycles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 810 Ill. Comp. Stat. 5/2-314.

252.   Defendants are and were at all relevant times "merchants" with respect to bicycles under 810 Ill. Comp. Stat. 5/2-104(1) and 5/2A-103(3), and a "seller" of bicycles under 5/2-103(1)(d).

253.   All Class Members who purchased cranksets and/or Class Bicycles in Illinois are "buyers" within the meaning of 810 Ill. Comp. Stat. 5/2-103(1)(a).

254.    The Class Bicycles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. 5/2-105(1).

255.    The cranksets and Class Bicycles are not merchantable, and as such Shimano and the Bicycle Manufacturer Defendants breached their implied warranties, because at the time of sale and all times thereafter:

> a)    The cranksets and the Class Bicycles would not pass without objection in the bicycle trade given the Crankset Defect;
>
> b)    The Crankset Defect renders the cranksets and Class Bicycles unsafe to bike and unfit for ordinary purposes;
>
> c)    The Class Bicycles and the cranksets therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Crankset Defect; and
>
> d)    The cranksets and Class Bicycles do not conform to their labeling, which represents that the cranksets and bicycles are safe and suitable for their intended use.

256.    Plaintiff and the other Class members timely provided Shimano and the Bicycle Manufacturer Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

257.    Alternatively, Plaintiff and the other Class members were excused from providing Shimano and the Bicycle Manufacturer Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Bicycle Manufacturer Defendants have long known that the Class Bicycles contained the Defective Cranksets, and that the Defective Cranksets have caused cranksets to malfunction in crashes involving the Class Bicycles. Shimano has issued a recall, but that recall is inadequate because, *inter alia*: (a) they are belated because Shimano and the Bicycle Manufacturer Defendants knew about the Defective Cranksets for years and did nothing to recall or remedy the serious safety defect; (b) with hundreds of

1  thousands of bicycles impacted in existing and potential future recalls, as a result of the
2  Bicycle Manufacturer Defendants' concealment of the Crankset Defect, the recalls
3  cannot be implemented effectively due to supply constraints and resulting delays; and
4  (c) the recalls are incomplete, and apply to only a subset of the Class Bicycles and
5  cranksets.

6      258.   Plaintiffs and the other Class members have had sufficient direct dealings
7  with either Defendants or their agents (retailers) to establish privity of contract between
8  Plaintiff and the other Class members. Notwithstanding this, privity is not required in
9  this case because Plaintiff and the other Class members are intended third-party
10 beneficiaries of contracts between Defendants and their agents; specifically, they are
11 the intended beneficiaries of Defendants' implied warranties. The retailers were not
12 intended to be the ultimate consumers of the Class Bicycles and have no rights under
13 the warranty agreements provided with the Class Bicycles; the warranty agreements
14 were designed for and intended to benefit the ultimate consumers only. Finally, privity
15 is also not required because Plaintiff's and the other Class members' Class Bicycles
16 are  dangerous  instrumentalities  due  to  the  aforementioned  defects  and
17 nonconformities.

18     259.   Plaintiff, individually and on behalf of the other Class members, seeks all
19 available monetary damages (including actual, compensatory, and punitive damages),
20 injunctive and equitable relief, and attorneys' fees and costs.

21 **Illinois Count 3: Violations of Illinois Consumer Fraud and Deceptive Business**
22 **Practices Act (815 Ill. Comp. Stat. 505/1, _et seq._) Against All Defendants**

23     260.   Plaintiffs reallege and incorporate by reference Paragraphs 1-85 as though
24 fully set forth herein.

25     261.   The Illinois Plaintiff brings this count under Illinois law, individually and
26 on behalf of the other members of the Illinois Class against Shimano and the Bicycle
27 Manufacturer Defendants for their respective cranksets and Class Bicycles.

28

262.    Defendants, Plaintiff, and the other Class members are "persons" within the meaning of 815 Ill. Comp. Stat. 505/1(c).

263.    Plaintiff and the other Class members are "consumers" within the meaning of 815 Ill. Comp. Stat. 505/1I.

264.    The cranksets and Class Bicycles are "merchandise" within the meaning of 815 Ill. Comp. Stat. 505/1(b).

265.    Defendants were and are engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. 505/1(f).

266.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices." 815 Ill. Comp. Stat. 505/2.

267.    Defendants' violations of the Illinois CFA occurred repeatedly in their trade or practice – including the design, manufacture, distribution, marketing, and sale of the Defective Cranksets and the Class Bicycles.

268.    Defendants, through their agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Bicycles and the Defective Cranksets, as detailed above.

269.    Defendants had an ongoing duty to Plaintiff and the other Class members to refrain from unfair or deceptive practices under the Illinois CFA in the course of their business. Specifically, Defendants owed Plaintiff and the other Class members a duty to disclose all the material facts concerning the Defective Cranksets and the Defective Cranksets in the Class Bicycles because:

a)    Given the Bicycle Manufacturer Defendants' role in the design, manufacture, testing, and sale of Class Bicycles and Defective Cranksets, and their experience and knowledge as experts and long-time veterans of the bicycle industry, they, along with Shimano, possessed exclusive

CLASS ACTION COMPLAINT

access to and were in a superior position to know the true facts about the Defective Cranksets;

b)      Given Shimano's design, development, testing, and manufacture of the Defective Cranksets and its experience and knowledge as experts and long-time veterans of the bicycle industry, it, along with the Bicycle Manufacturer Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Cranksets;

c)      Defendants knew that the Crankset Defect gave rise to serious safety concerns for the consumers who purchased the Class Bicycles;

d)      The Crankset Defect poses a severe risk of harm in that, among other things, the recalled bonded crank parts can separate and break, causing severe injuries, including bone fractures, joint displacement and lacerations, and potentially fatal injuries;

e)      Defendants knew about and investigated the Crankset Defect, but then did not notify consumers about it until Shimano announced a recall on September 21, 2023, which individually and together deprived Plaintiff and the other Class members of an opportunity that otherwise could have led them to discover the truth about the Crankset Defect in their Class Bicycles; and

f)      The Bicycle Manufacturer Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Bicycles and their cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Bicycles that they marketed and offered for sale to consumers, the Bicycle Manufacturer Defendants had the duty to disclose the whole truth.

g)      Shimano made, helped to make, or conspired to make incomplete representations about the safety and reliability of their cranksets, while

purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Defective Cranksets that they marketed and offered for sale to consumers, Shimano had the duty to disclose the whole truth.

270. By misrepresenting the Class Bicycles as safe and reliable and the cranksets installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Crankset Defect to consumers, Defendants engaged unfair or deceptive business practices prohibited by the 815 Ill. Comp. Stat. 505/2, including the use or employment of deception and fraud, and/or the concealment, suppression, or omission of material facts, and engaging in conduct which creates a likelihood of confusion or misunderstanding.

271. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Bicycles had properly-functioning and reliable cranksets and the cranksets would properly function and be reliable. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiff and the other Class members, about the true safety and reliability of the cranksets and Class Bicycles and/or the Defective Cranksets installed in them, the quality of the Class Bicycles and cranksets, and the true value of the Class Bicycles and the cranksets.

272. Defendants intended for Plaintiff and the other Class members to rely on their misrepresentations, omissions, and concealment – which they did by purchasing the cranksets and Class Bicycles at the prices they paid believing that their cranksets and bicycles would not have a Crankset Defect that would affect the quality, reliability, and safety of the Class Bicycles and their cranksets.

CLASS ACTION COMPLAINT

273. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Crankset Defect and true characteristics of the cranksets and Class Bicycles were material to the decisions of Plaintiff and the other Class members to purchase those cranksets and bicycles, as Defendants intended. Plaintiff and the other Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Bicycles and their cranksets were safe and reliable in deciding to purchase the Class Bicycles and cranksets.

274. Plaintiff's and the other Class members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

275. Plaintiff and the other Class members did not, and could not, unravel Defendants' deception on their own.

276. Had they known the truth about the Crankset Defect, Plaintiff and the other Class members would not have purchased the cranksets and/or Class Bicycles, or would have paid significantly less for them.

277. As a direct and proximate result of Defendants' deceptive practices, Plaintiff and the other Class members have sustained economic injury and loss – either by purchasing a crankset or bicycle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above – that first occurred at the time each crankset and/or Class Bicycle was purchased.

278. Defendants' violations present a continuing risk to Plaintiff and the other Class members, as well as to the general public, because the Class Bicycles and cranksets remain unsafe due to the Defective Cranksets therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

279. Plaintiff and the other Class members timely provided Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as

1    alleged in the paragraphs addressing Defendants' notice, above. Because Defendants

2    failed to adequately remedy their unlawful conduct, Plaintiff seeks all damages and

3    relief to which Plaintiff and the other Class members are entitled.

4        280.   Alternatively, Plaintiff and the other Class members were excused from

5    providing Shimano and the Bicycle Manufacturer Defendants with notice and an

6    opportunity to cure the breach, because it would have been futile. As alleged above,

7    Shimano and the Bicycle Manufacturer Defendants knew about the Defective

8    Cranksets for years. Moreover, Shimano issued a recall, but that recall is inadequate

9    because, *inter alia*: (a) it is belated because the Bicycle Manufacturer Defendants and

10   Shimano knew about the Defective Cranksets for years and did nothing to recall or

11   remedy the serious safety defect; (b) with hundreds of thousands of bicycles impacted

12   in existing and potential future recalls, as a result of the Bicycle Manufacturer

13   Defendants' and Shimano's concealment of the Crankset Defect, the recalls cannot be

14   implemented effectively due to supply constraints and resulting delays; and (c) the

15   recalls are incomplete, and apply to only a subset of the Class Bicycles and cranksets.

16       281.   Pursuant to 815 Ill. Comp. Stat. 505/10a, Plaintiff and the other Class

17   members seek an order enjoining Defendants' unfair or deceptive acts or practices and

18   awarding actual damages, treble damages, restitution, attorneys' fees, and any other

19   just and proper relief available under the Illinois CFA.

20       **Illinois Count 4: Unjust Enrichment Against Shimano and the Bicycle**

21       **Manufacturer Defendants**

22       282.   Plaintiffs reallege and incorporate by reference Paragraphs 1-85 as though

23   fully set forth herein.

24       283.   The Illinois Plaintiff brings this count under Illinois law, individually and

25   on behalf of the other members of the Illinois Class against Shimano and the Bicycle

26   Manufacturer Defendants for their respective cranksets and Class Bicycles.

27       284.   When they purchased cranksets or the Class Bicycles, Plaintiff and the

28   other Class members conferred tangible and material economic benefits upon Shimano

1 and/or the Bicycle Manufacturer Defendants, who readily accepted and retained these
2 benefits.

3      285.    Plaintiff and the other Class members would not have purchased their
4 cranksets and/or Class Bicycles, or would have paid less for them, had they known of
5 the Crankset Defect at the time of purchase. Therefore, Shimano and the Bicycle
6 Manufacturer Defendants profited from the sale of the cranksets and Class Bicycles to
7 the detriment and expense of Plaintiff and the other Class members.

8      286.    Shimano and the Bicycle Manufacturer Defendants appreciated these
9 economic benefits. These benefits were the expected result of Shimano and the Bicycle
10 Manufacturer Defendants acting in their pecuniary interest at the expense of their
11 customers. They knew of these benefits because they were aware of the Crankset
12 Defect, yet they failed to disclose this knowledge and misled Plaintiff and the other
13 Class members regarding the nature and quality of the cranksets and/or Class Bicycles
14 while profiting from this deception.

15      287.    It would be unjust, inequitable, and unconscionable for Shimano and the
16 Bicycle Manufacturer Defendants to retain these benefits, including because they were
17 procured as a result of their wrongful conduct alleged above.

18      288.    Plaintiff and the other Class members are entitled to restitution of the
19 benefits Shimano and the Bicycle Manufacturer Defendants unjustly retained and/or
20 any amounts necessary to return Plaintiff and the other Class members to the position
21 they occupied prior to dealing with those Defendants, with such amounts to be
22 determined at trial.

23      289.    Plaintiff pleads this claim separately as well as in the alternative to their
24 claims for damages under Federal Rule of Civil Procedure 8(a)(3), because if the Court
25 dismisses Plaintiff's claims for damages and enters judgment on them in favor of
26 Shimano and the Bicycle Manufacturer Defendants, Plaintiffs will have no adequate
27 legal remedy.

28

CLASS ACTION COMPLAINT

## VIII.     REQUEST FOR RELIEF

Plaintiffs, individually and on behalf of the other members of the proposed Classes, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A.     An order certifying the proposed Classes, designating Plaintiffs as the named representatives of the Classes, designating the undersigned as Class Counsel, and making such further orders for the protection of Class members as the Court deems appropriate, under Federal Rule of Civil Procedure 23;

B.     A declaration that the Defective Cranksets are defective;

C.     An award to Plaintiffs and the other Class members of compensatory, exemplary, and punitive remedies and damages and statutory penalties, including interest, in an amount to be proven at trial;

D.     An award to Plaintiffs and the other Class members for the return of the purchase prices of the Defective Cranksets and/or Class Bicycles with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale, for damages and for reasonable attorney fees;

E.     A Defendant-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket and loss-of-use expenses and damages claims associated with the Defective Cranksets and Class Bicycles, can be made and paid, such that Defendants, not the Class members, absorb the losses and expenses fairly traceable to the recall of the Defective Cranksets;

F.     A declaration that Defendants must disgorge, for the benefit of Plaintiff and the other Class members, all or part of the ill-gotten profits they received from the sale of the Defective Cranksets and/or Class Bicycles, or make full restitution to Plaintiffs and the other Class members;

G.     An award of attorneys' fees and costs, as allowed by law;

H.     An award of pre-judgment and post-judgment interest, as provided by law;

1      I.    Leave to amend this Complaint to conform to the evidence produced

2  during discovery and at trial; and

3      J.    Such other relief as may be appropriate under the circumstances.

4  **IX.**    **JURY DEMAND**

5    Plaintiffs hereby demand a trial by jury.

6  Dated:  October 3, 2023

7                          *s/  Steven M. Jodlowski*

8                      Steven M. Jodlowski (Bar No. 239074)
**DICELLO LEVITT LLP**

9                      4747 Executive Drive, Second Floor
San Diego, California 92121

10                   Tel.: 619-923-3939
stevej@dicellolevitt.com

11                   Adam J. Levitt*

12                   John E. Tangren*
Daniel R. Ferri*

13                   **DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor

14                   Chicago, Illinois  60602
Tel.: 312-214-7900

15                   alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferri@dicellolevitt.com

16

17                   Eric S. Dwoskin*
**DWOSKIN WASDIN LLP**

18                   433 Plaza Real, Suite 275
Boca Raton, Florida 33432

19                   Tel.: 561-849-8060
edwoskin@dwowas.com

20                   Nicholas F. Wasdin*
**DWOSKIN WASDIN LLP**

21                   110 North Wacker Drive
Chicago, Illinois 60606

22                   Tel.: 312-343-5361
nwasdin@dwowas.com

23

24                   Robert G. Loewy
**LAW OFFICES OF ROBERT G. LOEWY, P.C**

25                   20 Enterprise, Suite 310
Aliso Viejo, California 92656

26                   Tel.: 949-468-7150
rloewy@rloewy.com

27

28                   *Counsel for Plaintiffs and the Proposed Classes*
*\*(pro hac vice* forthcoming)

CLASS ACTION COMPLAINT